604 A.2d 1167

**Anthony STANNER, Deceased, Mollie Stanner, Widow, Petitioner,**

**v.**

**WORKMEN'S COMPENSATION APPEAL BOARD (WESTINGHOUSE ELECTRIC CO.),**
**Respondent.**

Commonwealth Court of Pennsylvania.

Argued Oct. 8, 1991.

Decided Feb. 28, 1992.

94

James J. Bedortha, for petitioner.
Michael W. Brant, for respondent.

Before McGINLEY and SMITH, JJ., and BARRY, Senior Judge.

BARRY, Senior Judge.

Claimant, Mollie Stanner, surviving widow of Anthony Stanner, deceased, petitions for review of the order of the Workmen's Compensation Appeal Board (the Board) which affirmed a referee's decision dismissing Claimant's fatal claim petition filed under The Pennsylvania Workmen's

Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1031. The issues raised on appeal are whether Claimant's decedent sustained "injury arising in the course of his employment" under Section 301(c)(1) of the Act, 77 P.S. § 411(1), where his death was caused by sudden death syndrome which occurred after working out at a fitness center operated by Westinghouse Electric Co. (Employer) and located on its premises; and whether the referee's findings of Claimant's failure to establish a causal connection between the injury and the employment are supported by substantial evidence.

On April 8, 1987, Claimant filed a fatal claim petition alleging that her husband, Anthony Stanner (Stanner), died on January 19, 1987 as a result of a work-related myocardial infarction. Stanner, employed as a manager in the International Telecommunication Systems Division, died shortly after his routine workout at Employer's fitness center before his regularly scheduled work hours. Stanner exercised two or three times per week for nine months prior to his death.

The referee made the following relevant findings of fact:
6. In support of her petition the claimant introduced the deposition testimony of Larry E. Hurwitz, M.D. Dr. Hurwitz is board certified in general internal medicine and cardiology. At the request of claimant's counsel he reviewed the autopsy report on Anthony Stanner, a cardiovascular health evaluation report signed by John R. Cobb and dated February 3, 1986 which was addressed to Tony Stanner at the Tele–Computer Center, and some letters addressed to Mr. Stanner from the health center, as well as copies of Mr. Stanner's Westinghouse Tele–Computer Health Center workout charts. After reviewing the previously stated material and copies of Mr. Stanner's cholesterol reports dated November 1985 and May 1986, a sugar report dated May 1986, an exercise treadmill test report including electrocardiograms and a health questionnaire completed by Mr. Stanner on September 9, 1985, Dr. Hurwitz concluded that Anthony

Stanner died as a result of sudden death syndrome. He stated that sudden death syndrome was the result of sudden, fatal heart rhythm disturbance. He observed that the decedent had suffered two myocardial infarctions, one old and one recent, but these were not the cause of death. Dr. Hurwitz testified that the decedent's high level of physical exercise in the short time frame just prior to his death was the immediate and precipitating cause of death. However, Dr. Hurwitz also testified that the decedent was suffering from severe coronary artery disease and was a walking time bomb. He stated Mr. Stanner was at high risk for a coronary infarction because of his family history and his high levels of cholesterol and low records of HDL cholesterol. He noted that given the severe diseased condition of Mr. Stanner's coronary arteries that an episode of sudden death could have occurred at any time.

7. The defendant/employer introduced the deposition testimony of John R. Cobb, the director of the Westinghouse Tele–Computer Health Center at the time of Mr. Stanner's death. Mr. Cobb testified to the following:

a) The health and fitness center was established in May 1984 for the exclusive use of Westinghouse employees and was staffed by Westinghouse exercise physiologists from 6:00 a.m. to 6:30 p.m.

b) Westinghouse had no mandatory policy requiring employee participation in the health and fitness program. Employee participation is totally voluntary and the records of the employees participating in the fitness center are kept at the fitness center and are not part of the employees' personnel files.

c) Westinghouse has a policy of flexible work hours. Any time spent by an employee in the fitness center during working hours would have to be made up during the same day.

d) Mr. Stanner exercised at the fitness center for approximately one year prior to his death. He used the same exercise program he used on the morning of his death

on the average of two to three times per week in the nine months preceding his death. This exercise program had been developed specifically for Mr. Stanner by the staff of the Westinghouse fitness center.

8. The Referee finds the testimony of Dr. Hurwitz to be credible. His testimony clearly and convincingly established Mr. Stanner's cause of death as sudden death syndrome. However, nothing in his testimony established a causal connection between Mr. Stanner's death and his responsibilities or activities as a manager for Westinghouse.

9. The Referee finds the testimony of Mr. Cobb to be credible. His testimony clearly and convincingly established that Mr. Stanner's participation in the Westinghouse employee fitness center exercise program was voluntary.

10. The Referee finds that the claimant's decedent, Anthony Stanner, died on January 19, 1987 as a result of sudden death syndrome and his death was not related to his employment.

Based upon these findings of fact, the referee concluded that Claimant failed to establish a work-related injury resulting in Stanner's death and consequently dismissed the fatal claim petition. On appeal, the Board affirmed the referee's decision.[1]

Before this Court, Claimant contends that the referee's finding that Stanner's death was unrelated to his employment is not supported by substantial evidence. More specifically, Claimant argues that she is entitled to benefits under Section 301(c)(1) of the Act [2] because Stanner sustained the

1. This Court's scope of review of the Board's decision is limited to determining whether Claimant's constitutional rights have been violated, whether an error of law has been committed, or whether all necessary factual findings are supported by substantial evidence. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa.Commonwealth Ct. 436, 550 A.2d 1364 (1988).

2. Section 301(c)(1) of the Act provides in pertinent part:
 The terms 'injury' and 'personal injury,' as used in this act, shall be construed to mean an injury to an employe, regardless of his previous physical condition, arising in the course of his employ-

injury which caused his death while he was actually engaged in activities in furtherance of Employer's business or affairs. Employer contends on the other hand that even if Stanner was engaged in furtherance of Employer's business or affairs, Claimant must additionally establish a causal connection between Stanner's injury and employment. It is well settled that heart-related injuries are compensable under the Act if they (1) arise in the course of employment and (2) are causally related thereto. *Brody v. Workmen's Compensation Appeal Board (Pennsylvania Public Utility Commission)*, 138 Pa.Commonwealth Ct. 456, 588 A.2d 575 (1991); *Ryan v. Workmen's Compensation Appeal Board (Automatic Timing & Controls Co.)*, 82 Pa.Commonwealth Ct. 643, 477 A.2d 16 (1984).

Claimant's contention that Stanner was actually engaged in activities in furtherance of Employer's business or affairs and therefore in the course of his employment at the time of injury is supported by the record and applicable case law.

Under the definitions of "injury" and "injury arising in the course of his [or her] employment" set forth in Section 301(c)(1) of the Act, injuries may be sustained in the course of employment in two distinct situations: (1) Where the employee, whether on or off the premises, is injured while actually engaged in furtherance of the employer's business or affairs, or (2) where the employee, although not actually engaged in furtherance of the employer's business or affairs, (a) is on the premises occupied or under the control of

ment and related thereto.... The term 'injury arising in the course of his employment,' as used in this article, ... shall include all other injuries sustained while the employe is actually engaged in the furtherance of the business or affairs of the employer, whether upon the employer's premises or elsewhere, and shall include all injuries caused by the condition of the premises or by the operation of the employer's business or affairs thereon, sustained by the employe, who, though not so engaged, is injured upon the premises occupied by or under the control of the employer, or upon which the employer's business or affairs are being carried on, the employee's presence thereon being required by the nature of his employment.

the employer, or upon which the employer's business or affairs are being carried on; (b) is required by the nature of his employment to be present on employer's premises; and (c) sustains injuries caused by the condition of the premises or by operation of the employer's business or affairs thereon. *Hemmler v. Workmen's Compensation Appeal Board (Clarks Summit State Hospital)*, 131 Pa.Commonwealth Ct. 24, 569 A.2d 395 (1990).

Whether an employee was acting in the course of his employment at the time of his injury is a question of law to be determined on the basis of the findings of fact. *Peterson v. Workmen's Compensation Appeal Board (PRN Nursing Agency)*, 528 Pa. 279, 597 A.2d 1116 (1991); *Hemmler*. The phrase "actually engaged in the furtherance of the business or affairs of the employer" usually expressed in the term "in the course of employment," must be given a liberal construction. *Mann v. City of Philadelphia*, 128 Pa.Commonwealth Ct. 499, 563 A.2d 1284 (1989), *appeal denied*, 525 Pa. 622, 577 A.2d 892 (1990). This is especially so when the injury occurs on the employer's premises. *Id.*

In *Hemmler*, the claimant suffered sprain to his ankle and torn ligaments while playing basketball during his lunch break with other employees in the gymnasium on the employer's premises. The sole issue in *Hemmler* was whether the claimant was in the course of his employment at the time of his injury. This Court reversed the Board and reinstated the referee's award of benefits concluding that the claimant was engaged in an activity in furtherance of the employer's business or affairs, and, therefore, was in the course of his employment. In *Hemmler*, the following factors were crucial to the Court's conclusion: the employer encouraged its employees to participate in activities to improve their health, relieve the stress of their work and promote better mental attitude in the performance of their work; the employer posted information on the bulletin board encouraging employees to engage in sports activities;

and the employer's gymnasium was used for the employees during breaks to play basketball.

Earlier, in *Mann*, this Court held that the lifeguard employed by the city was engaged in furtherance of the business or affairs of the employer at the time the employee was drowned even though he was swimming on his lunch break while the city pool was closed. Determining that the claimant was required to maintain swimming skills for the purpose of Red Cross certification and was allowed into the pool at the time of his drowning, this Court concluded that the claimant's swimming activity was in furtherance of the employer's interest whether or not it also furthered the claimant's personal interest. *Id.* 128 Pa.Commonwealth Ct. at 505, 563 A.2d at 1287.

Similarly, in *Tredyffrin–Easttown School District v. Breyer*, 48 Pa.Commonwealth Ct. 81, 408 A.2d 1194 (1979), the injury sustained by a high school track coach, while hosting a picnic at his home for members of the track team, was held compensable as it occurred in furtherance of the employer's business or affairs even though the picnic was not sponsored by the employer. The Court articulated that the employer encouraged the claimant to participate in extra-curricular activities with his students and his participation in such activities was in furtherance of the employer's interest.

In the present matter, the relevant testimony of John R. Cobb, director of Employer's health center, can be summarized as follows: the fitness center was owned, operated and staffed by Employer's employees for exclusive use of its employees; the employees were encouraged to participate in its fitness program; flexible working hours were available to the employees to enable them to use the facility; Employer distributed brochures to its employees describing the program and stating, inter alia, that the employees' participation in the program benefits both Employer and the employees; Employer's manager of health care costs felt that the employees' participation in the program could reduce health care costs to Employer; and Stanner's

exercise program was specifically developed by the staff of the fitness center. (Deposition of John R. Cobb, 8/8/88, pp. 28–29, 31, 37–38, 40.)

Applying the rationale set forth in *Hemmler, Mann* and *Tredyffrin–Easttown,* this Court concludes that as a matter of law, Stanner was actually engaged in activities in furtherance of Employer's business or affairs at the time of his injury and thus was in the course of the employment under Section 301(c)(1) of the Act, and that the referee committed an error of law in concluding otherwise. As in our earlier cases, Employer encouraged its employees' participation in the fitness program which benefited both Employer and the employees.

 Employer argues that the order of the Board must be affirmed because the referee's finding of Claimant's failure to establish a causal connection is supported by substantial evidence. Where a causal connection between the claimant's heart-related injuries and employment is not obvious, the claimant has the burden of proving the causal connection through unequivocal medical testimony. *Ryan.*

Dr. Larry E. Hurwitz, the claimant's medical expert, was asked on direct examination whether he believed the decedent's strenuous exercise contributed to his death. Dr. Hurwitz could not have been any more explicit in responding, "It is my opinion that that high-level physical exercise in the short time frame just prior to his sudden death was the immediate and significant precipitating cause of his sudden death." (Deposition of Dr. Hurwitz, 12/23/87, p. 6.) Dr. Hurwitz went on to explain in medical terms the physiological reasons for his opinion. As the majority notes, Dr. Hurwitz did note on cross examination that the decedent's physical condition made him a candidate for a sudden death at any time. In his decision, the referee specifically stated:

The Referee finds the testimony of Dr. Hurwitz to be credible. His testimony clearly and convincingly established Mr. Stanner's cause of death as sudden death syndrome. However, nothing in his testimony established a causal connection between Mr. Stanner's death

and his responsibilities or activities as a manager for Westinghouse.

(Referee's decision, Finding of Fact 8, 4/17/89.)

The employer argues that there is substantial evidence to support the referee's factual finding concerning causal connection. We believe, however, that a reading of the entire decision of the referee shows that his decision was based upon the conclusion that the decedent was not in the course of his employment when he was participating in the exercise program. As we have already held, the decedent was in the course of his employment while engaging in the exercise.

■ The referee specifically credited Dr. Hurwitz' testimony and a portion of that testimony unequivocally concluded that the decedent's strenuous exercise was the "immediate and precipitating cause" of his death. That testimony is the necessary substantial evidence to support a finding that the death was work-related. The employer relies upon those portions of Dr. Hurwitz' testimony that recognized that the decedent's physical condition was such that he could have died suddenly at any time. Only two points need be made. First, concessions made on cross examination do not affect the substantiality of a definitive opinion offered on direct; such concessions only go to the weight of that opinion. *See Philadelphia College of Osteopathic Medicine v. Workmen's Compensation Appeal Board (Lucas)*, 77 Pa.Commonwealth Ct. 202, 465 A.2d 132 (1983). Of equal importance is Section 301(c)(1) of the Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 411 (Supp.1991–92) defines "injury" and "personal injury" as "an injury to an employe, *regardless of his previous physical condition*, arising in the course of his employment...." (Emphasis added.) Dr. Hurwitz offered the opinion that the decedent's exercise was the immediate and precipitating cause of his death. Because the referee specifically credited this testimony, we believe the Board's order must be reversed and benefits awarded.

## ORDER

NOW, February 28, 1992, the order of the Workmen's Compensation Appeal Board, at No. A89–1213, dated September 11, 1990, is reversed and benefits are awarded.

SMITH, Judge, dissenting.

I agree with the Majority that the decedent was actually engaged in activities in furtherance of Employer's business or affairs at the time of his injury and thus was acting in the course of his employment. I must respectfully dissent, however, from the Majority's conclusion that the Board must be reversed because "[Dr. Hurwitz'] testimony is the necessary substantial evidence to support a finding that the death was work-related." At 1171. In reaching this conclusion, the Majority has usurped the fact-finding function of the referee in disregard of the applicable scope of review by this Court.

The Majority rejects the referee's clear findings of a lack of causal connection between the decedent's employment and his heart-related injury[1] by simply stating that "a reading of the entire decision of the referee shows that his decision was based upon the conclusion that the decedent was not in the course of his employment...." *Id.* The Majority then concludes that Dr. Hurwitz' testimony that the decedent's strenuous exercise was the immediate and precipitating cause of his death supports a causal connection.[2]

A claimant who seeks benefits for a heart-related injury has the burden of establishing by unequivocal medical testimony a causal connection between the employment and the heart-related injury. *Brody v. Workmen's Compensation Appeal Board (Pennsylvania Public Utility Commission),*

---

1. Referee Findings of Fact Nos. 8, 10.

2. The Majority's assertion that the referee found credible Dr. Hurwitz' testimony that the decedent's strenuous exercise was the immediate and precipitating cause of death is not supported by the record. The referee in his Findings of Fact No. 6 simply sets forth a summary of Dr. Hurwitz' testimony without making a credibility determination.

138 Pa.Commonwealth Ct. 456, 588 A.2d 575 (1991). In a worker's compensation case in which the Board takes no additional evidence, the referee is the ultimate fact finder and his or her findings of fact, if supported by substantial evidence, must be accepted as true. *Yantos v. Workmen's Compensation Appeal Board (Vulcan Mold & Iron Co.)*, 128 Pa.Commonwealth Ct. 231, 563 A.2d 232 (1989). Further, the referee, in evaluating evidence, may accept or reject testimony of any witness, including a medical witness, in whole or in part. *Kraemer v. Workmen's Compensation Appeal Board (Perkiomen Valley School Dist.)*, 82 Pa.Commonwealth Ct. 469, 474 A.2d 1236 (1984). Moreover, when reviewing the referee's findings of fact, this Court is not to weigh evidence but merely to determine whether the whole record contains evidence which a reasonable person might find sufficient to support the referee's findings. *Lewis v. Commonwealth*, 508 Pa. 360, 498 A.2d 800 (1985). A review of the record clearly demonstrates that irrespective of the referee's erroneous conclusion that the decedent was not in the course of his employment, the referee's findings of a lack of causal connection are supported by substantial evidence and the order of the Board, therefore, must be affirmed.

The referee found that the decedent used the same exercise program which he used on the morning of his death for nine months. Referee Findings of Fact No. 7. Dr. Hurwitz testified that considering the decedent's family history and medical conditions including severe coronary artery disease, high levels of cholesterol, and two previous myocardial infarctions, one of which occurred several days prior to his death, an episode of sudden death could have occurred at any time. Dr. Hurwitz stated on cross-examination:

Q. Doctor, how would you classify the severity of Mr. Stanner's coronary artery disease by the pathologist?

A. Severe.

Q. With that degree of severity, Doctor, is it possible to predict when anybody will have a heart attack?

A. It's not possible to predict when they'll have a heart attack. It is possible to predict what kinds of events may make him at higher risks for sudden cardiac events, but one can't make a definitive prediction.

Q. Doctor, looking at just the description of the coronary arteries, it is possible, in consideration of Mr. Stanner's total picture, that this sudden-death episode could have occurred while he was asleep or walking or sitting?

A. Yes. He was a candidate for sudden death. There's no question.

Q. Regardless?

A. Regardless of where or when he was. However, there are settings in which sudden death is more likely to occur with this anatomy, and those settings are really those in which there is physical activity involved, because physical activity can precipitate these sudden rhythm disturbances.

. . . .

Q. Would you have considered him a walking time-bomb, and we're talking in hindsight with the autopsy results and his history?

A. Yes. Given the anatomy, any physical activity or any sudden increase in stress would have precipitated what eventually happened to him.

Deposition of Larry E. Hurwitz, M.D., pp. 23–24, 26.

The Majority correctly notes that Dr. Hurwitz' concession or contradicting testimony that sudden death syndrome could have occurred at any time goes to the weight of his opinion. At 1171. It was therefore within the referee's exclusive province and not this Court's to weigh that evidence and to make a credibility determination considering Dr. Hurwitz's testimony in its entirety. *Brody*. Since the record supports the referee's findings of a lack of causal connection between the decedent's employment and his injury, this Court may not disturb his findings.

Accordingly, I would affirm the order of the Board.