**Russell CARROLL, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (UNIVERSITY OF PENNSYLVANIA), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 23, 1999.

Decided April 26, 2000.

George D. Walker, Jr., Philadelphia, for petitioner.

No appearance entered for respondent.

Before SMITH, J., FLAHERTY, J., and JIULIANTE, Senior Judge.

JIULIANTE, Senior Judge.

Claimant Russell Carroll petitions for review of the May 25, 1999 order of the Workers' Compensation Appeal Board (Board) that reversed a decision of the workers' compensation judge (WCJ) granting Claimant's claim petition and awarding him specific loss benefits for loss of his left eye. Claimant contends that the Board erred in articulating the burden of proof necessary to support an award of benefits in a claim petition proceeding for specific loss benefits; Claimant also contends that the Board erred in concluding that there was no substantial evidence to show that Claimant's retinal detachment, which resulted from his suppression of a sneeze during a business meeting, was caused by the condition of Employer's premises. We reverse.

The WCJ found the following facts. On July 10, 1995, Claimant, while employed by the University of Pennsylvania (Employer) as Director of the Administrative Computer Center, was attending a meeting with Carl Abrahamson, his boss, and five other directors. The meeting started at about 9:00 a.m. and at about 9:30 a.m., while he was sitting at a table with five or six other people, Claimant felt a sneeze coming on. Not wanting to spread any germs, Claimant tried to suppress the sneeze but failed. After the sneeze took place, Claimant felt pressure in his head and within 30 seconds to a minute, felt a pain like a rubber band had struck his left eye.

Claimant went home and noticed that something had happened to his eye. After going to work the next morning, Claimant covered his right eye, looked at someone, and could only see that person from the waist down. Everything in the upper part was black. Claimant gave proper notice of his injury to Abrahamson, his supervisor, and sought medical treatment.

On January 9, 1996, Claimant filed a claim petition seeking specific loss benefits for loss of his left eye as a result of his work injury, which he described as a detached left retina. Employer filed an answer denying Claimant's allegation that his injury was work-related.

A hearing was held at which both parties presented evidence, including medical evidence. The WCJ found Claimant to be credible witness. The WCJ further found the testimony of Claimant's treating physicians, Dr. Michael Maizel and Dr. Michael Colucciello, to be more credible than the testimony of Employer's medical witness, Dr. Thomas R. Hedges, Jr.

On July 7, 1995, three days prior to Claimant's injury, Dr. Maizel had examined Claimant and at that time, everything dealing with Claimant's eye was fine. On July 11, 1995, the day after the meeting, Dr. Maizel noted that Claimant had two retinal tears in the interior portion of his left eye. Based on his July 11, 1995 examination, Dr. Maizel diagnosed Claimant with a retinal tear/retinal detachment.

Dr. Colucciello, an eye surgeon, also examined Claimant on July 11, 1995. The doctor diagnosed Claimant with a rhegmatogenous retinal detachment. On July 13, August 28, and September 12, 1995, Dr. Colucciello performed eye surgery on Claimant.

Dr. Colucciello testified that Claimant's visual acuity for his left eye has been at a light-perception level only. The doctor concluded that Claimant's current condition is the direct result of his suppression of a sneeze on July 10, 1995. Dr. Colucciello further testified that he found no other conditions that would predispose Claimant to a retinal tear.

Based on Claimant's medical evidence, the WCJ determined that Claimant had permanently lost the use of his left eye for all practical intents and purposes and, therefore, that he sustained a compensable specific loss eye injury in the course of his employment. Consequently, the WCJ granted Claimant's claim petition and awarded him 275 weeks of specific loss benefits for the loss of his left eye.

The Board, however, reversed the WCJ's order. In its decision, the Board reasoned that although Claimant was on Employer's premises, as required, when the injury occurred, Claimant offered no evidence to prove that his suppression of the sneeze was caused by a condition of Employer's premises.

■ Claimant appealed to this Court.[1] On review, this Court is limited to a determination of whether the necessary findings of fact are supported by substantial evidence, whether errors of law have been committed or whether constitutional rights have been violated. *Sears, Roebuck & Co. v. Workers' Compensation Appeal Board (Lear)*, 707 A.2d 618 (Pa.Cmwlth.1998).

Claimant's first argument is that the Board erred by failing to articulate the burden of proof necessary to support an award in a claim petition proceeding. In its decision, the Board, citing Section 301(c)(1) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 411(1), and the Superior Court's decision in *Gertz v. Temple University-Commonwealth Sys. of Higher Educ.,* 443 Pa.Super. 177, 661 A.2d 13 (1995), stated: "A compensable injury occurs when an employee: 1) is on the employer's premises, 2) is required to be present on the premises by the nature of his employment, and 3) sustains an injury caused by a condition on the premises." Board's Decision at 5; R.R. 144a.

The Court believes that the Board misinterpreted the language in Section 301(c)(1) of the Act and the rationale in *Gertz.* In *Gertz,* the Superior Court found that at the time Gertz was injured, she was not in the furtherance of her employer's affairs.

1. On December 16, 1999, this Court issued an order precluding Employer from filing a brief.

■ To the contrary, in the instant case, Claimant testified that, as a part of his job, he attended meetings and planned the installation of computer hardware and software. Finding of Fact No. 2; N.T. 5; R.R. 12a. On July 10, 1995, Claimant was attending a meeting with his boss and five other directors when the injury occurred. Finding of Fact No. 4; N.T. 5–6; R.R. 12–13a. The meeting started about 9:00 a.m. and the sneezing incident occurred about 9:30 a.m., while Claimant was seated at a table with five or six people. Claimant attempted to hold his sneeze so he would not spread his germs to the other people at the meeting. Finding of Fact No. 5; N.T. 8–9; R.R. 15–16a.

Section 301(c)(1) of the Act provides in part that the "terms 'injury' and 'personal injury' as used in this act, shall be construed to mean an injury to an employe, regardless of his previous physical condition, arising in the course of his employment and related thereto...." 77 P.S. § 411(1). The Supreme Court has recognized the existence of a rebuttable presumption that a claimant's injury is considered work-related when it occurs on the employer's premises. *Kohler v. McCrory Stores*, 532 Pa. 130, 615 A.2d 27 (1992).

Moreover, in *Stanner v. Workmen's Compensation Appeal Board (Westinghouse Elec. Co.)*, 146 Pa.Cmwlth. 92, 604 A.2d 1167, 1170 (1992), this Court recognized:

Under the definitions of "injury" and "injury arising in the course of his [or her] employment" set forth in Section 301(c)(1) of the Act, injuries may be sustained in the course of employment in two distinct situations: (1) *Where the employee, whether on or off the premises, is injured while actually engaged in furtherance of the employer's business or affairs*, or (2) where the employee, although not actually engaged in furtherance of the employer's business or affairs, (a) is on the premises occupied or under the control of the employer, or upon which the employer's business or affairs are being carried on; (b) is required by the nature of his employment to be present on employer's premises; and (c) sustains injuries caused by the condition of the premises or by operation of the employer's business or affairs thereon. (Emphasis added).

In *Stanner*, the Court further stated that the "phrase 'actually engaged in the furtherance of the business or affairs of the employer' usually expressed in the term 'in the course of employment,' must be given a liberal construction. This is especially so when the injury occurs on the employer's premises." *Id.* (citations omitted).

In *City of New Castle v. Workmen's Compensation Appeal Board (Sallie)*, 118 Pa.Cmwlth. 51, 546 A.2d 132 (1988), this Court recognized that

[a]n employee may be doing something other than the exact work assigned to him, and he may not be strictly at his assigned work, either as to time or place, yet the continuity of the employment is not broken unless such activity is wholly foreign to his employment or constitutes an abandonment thereof.

*Id.* at 134 (quoting *Dupree v. Barney*, 193 Pa.Super. 331, 163 A.2d 901, 907 (1960)). In *City of New Castle*, the decedent kissed a co-employee on the cheek prior to her leaving on maternity leave. The decedent subsequently contracted fatal meningitis from his co-employee, who was a carrier of the disease. The Court in *City of New Castle* determined that the decedent's action in kissing his co-employee good-bye "was neither foreign to his employment nor did it constitute an abandonment thereof." 546 A.2d at 134.

The Court believes that the circumstances in the case at bar clearly, if not unquestionably, indicate that Claimant was in the furtherance of Employer's affairs at the time of the injury. Claimant was involved in a meeting with his boss and his peers at the time of the injury. His attempt to suppress a sneeze during that meeting in order to avoid spreading germs to his co-employees cannot be considered

either an action foreign to his employment or an action in abandonment thereof. As a result, this Court concludes that Claimant's injury occurred while he was in course of his employment and, therefore, is compensable under Section 301(c)(1) of the Act, 77 P.S. § 411(1). *Stanner; City of New Castle.*

In view of the foregoing, this Court concludes that the Board erred in reversing the WCJ's award of specific loss benefits on the ground that Claimant failed to present evidence that his attempted suppression of sneeze and his subsequent eye injury were caused by a condition of Employer's premises.[2] Because Claimant's injuries occurred while he was in the furtherance of Employer's affairs and, therefore, in the course of his employment within the meaning of Section 301(c)(1) of the Act, no such proof is necessary. *Stanner; City of New Castle.* Accordingly, the order of the Board is reversed and the WCJ's order granting Claimant's claim petition is reinstated.

### *ORDER*

AND NOW, this 26th day of April, 2000, for the reasons set forth in the foregoing opinion, the May 25, 1999 order of the Workers' Compensation Appeal Board is hereby reversed and the WCJ's order is reinstated.

---

2. Having determined that Claimant's injury was compensable because he was in the furtherance of Employer's affairs at the time of his injury and, therefore, that the Board erred in ruling that Claimant needed to demonstrate that his attempted suppression of a sneeze and resulting injury were caused by a condition of Employer's premises, the Court need not address Claimant's second argument that Board erred in determining that Claimant failed to present sufficient evidence that his suppression of a sneeze while in a meeting was causally related to his injury.

In any event, the Court notes that Dr. Colucciello testified, within a reasonable degree of medical certainty, that given Dr. Maizel's report that Claimant's left was fine on July 7, 1995, three days before the accident, and that on July 11, 1995, the day after the accident, that Claimant had two retinal tears (*See* Maizel Deposition, pp. 12–13; R.R. 45–46a), the sneezing incident caused Claimant's retinal detachment and Claimant sustained a permanent loss of use of his left eye for all practical intents and purposes. Colucciello Deposition, pp. 17–19; R.R. 56a. The WCJ found the testimony and opinions of Dr. Maizel and Dr. Colucciello to be more credible and convincing than those of Dr. Hedges, Employer's evaluating physician. Finding of Fact No. 11; R.R. 117a.