# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert Hallinan,                         :
                    Petitioner          :
                                         :
            v.                           :    No. 80 C.D. 2016
                                         :    Submitted: June 17, 2016
Workers' Compensation Appeal             :
Board (Boston Coach),                    :
                    Respondent          :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge


**OPINION NOT REPORTED**


**MEMORANDUM OPINION**
**BY JUDGE COHN JUBELIRER**                    **FILED: September 12, 2016**

Robert Hallinan (Claimant) petitions for review of the Order of the Workers' Compensation Appeal Board (Board) affirming the Decision of a Workers' Compensation Judge (WCJ) that denied Claimant's Claim Petition. On appeal, Claimant argues that the WCJ and Board erred in concluding that based upon the facts and medical evidence, Claimant failed to satisfy his burden of proving that his cardiac arrest was related to his employment duties. Additionally, Claimant argues that the WCJ and Board failed to set forth any credibility determinations concerning the medical evidence. Discerning no error, we affirm.

The facts in this matter are undisputed. Claimant worked as an executive chauffeur for Boston Coach (Employer). (WCJ Decision, Finding of Fact (FOF) ¶

1.) On August 22, 2013, Claimant "passed out on an elevator at the Philadelphia International Airport." (Id.) Claimant suffered a sudden cardiac arrest while "on his way to pick up a client." (Id.) Claimant was transferred to a hospital, where he woke up about one week to 10 days later. (Id. ¶ 4.) At the hospital, Claimant received treatment for his sudden cardiac arrest. (Id. ¶ 5.) On September 4, 2013, Claimant underwent a procedure for an "[i]mplantation of a single chamber implantable cardioverter-defibrillator." (Id. ¶ 15.) The procedure was conducted by Daniel Frisch, M.D., who advised Claimant not to drive for six months from the time of the cardiac arrest. (Id. ¶ 16.) As a result of his loss of consciousness and cardiovascular condition, Claimant's driving privilege was recalled until he could demonstrate that his condition met the Pennsylvania Department of Transportation minimum medical standards. (Id. ¶ 6.) After successful corrective surgery, Claimant recovered and his driving privilege was reinstated. (Hr'g Tr., June 18, 2014 (June 2014 Hr'g Tr.), at 6, R.R. at 101.) Claimant returned to work full time without restrictions for Employer as a chauffeur on February 25, 2014. (Id.)

On October 29, 2013, Claimant filed a Claim Petition and Penalty Petition. (FOF ¶ 1; R.R. at 1-11.) In the Claim Petition, Claimant alleged that his sudden cardiac arrest occurred while in the course of his employment because he was on his way to pick up a client for Employer. (FOF ¶ 1; R.R. at 1-7.) Claimant sought payment for full disability from August 22, 2013, ongoing. (R.R. at 3.) In the Penalty Petition, Claimant alleged that Employer violated Section 406.1 of the Workers' Compensation Act[1] (Act) by failing to issue a timely Notice of

---

[1] Act of June 2, 1915, P.L. 736, added by, Section 3 of the Act of February 8, 1972, as amended, 77 P.S. § 717.1. Section 406.1 of the Act provides, in pertinent part:

*(Continued…)*

2

Compensation Payable (NCP) or Notice of Compensation Denial (NCD). (R.R. at 7-11.) Employer filed timely answers denying the allegations of both petitions. (FOF ¶ 1; R.R. at 12-17.) On November 14, 2013, Employer issued an NCD stating that "[t]he employee did not suffer a work-related injury. The definition of injury also includes aggravation of a pre-existing condition, or disease contracted as a result of employment." (R.R. at 121.) The petitions were assigned to the WCJ, who held hearings at which both Claimant and Employer presented evidence.

Claimant testified at the hearings, describing his work duties and the events, as he could remember, following the August 22, 2013, incident. (FOF ¶ 3.) As a chauffeur for Employer,

> Claimant received e-mails on the night before his trips and for his assignments, went to the [Employer]'s office, got a car for the trips, carried bags for about 80 percent of the work time, bought items for the [Employer]'s high profile clients, and received dispatches for rides throughout the work day.

(Id.) Claimant does not remember what happened the day of the cardiac event. (R.R. at 22.) From Claimant's understanding, he approached the airport elevator, and once inside he lost consciousness causing him to collapse. (Id.) The next thing Claimant remembered was waking up at the hospital a week to 10 days later.

---

> The employer and insurer shall promptly investigate each injury reported or known to the employer and shall proceed promptly to commence the payment of compensation due either pursuant to an agreement upon the compensation payable or a notice of compensation payable as provided in section 407 . . . on forms prescribed by the department and furnished by the insurer. The first installment of compensation shall be paid not later than the twenty-first day after the employer has notice or knowledge of the employe's disability.

Id.

(FOF ¶ 4; R.R. at 23.) Claimant has never lost consciousness prior to the incident and remained in the care of physicians. (R.R. at 24.) On February 25, 2014, six months after the incident, Claimant returned to work as a full-time chauffeur, without restrictions. (R.R. at 101.)

Because Claimant had returned to work in less than 52 weeks from the injury, without loss of earnings, both parties relied on written reports from their medical experts. Section 422(d) of the Act, 77 P.S. § 835.[2] Claimant presented two reports from medical expert Robert F. Sing, D.O. The first report is dated November 5, 2013, when Dr. Sing initially evaluated Claimant. (R.R. at 141-42.) According to Dr. Sing's evaluation of Claimant, the "cardiac event clearly occurred during the course of employment as he was picking up a client from the . . . [a]irport." (R.R. at 142.) However, Dr. Sing concluded that the specific etiology or cause of Claimant's cardiac arrest remained "unclear and hopefully will be ascertained from the medical records." (Id.) The second report by Dr. Sing is dated July 8, 2014, and was offered to rebut the opinions of Employer's medical expert, Manoj Khandelwal, M.D. (R.R. at 143-45.) Dr. Sing stated that while

---

[2] Added by Section 6 of the Act of June 26, 1919, as amended. Section 422(d) states, in relevant part:

> Where any claim for compensation at issue before a workers' compensation judge involves fifty-two weeks or less of disability, either the employe or the employer may submit a certificate by any health care provider as to the history, examination, treatment, diagnosis, cause of the condition and extent of disability, if any, and sworn reports by other witnesses as to any other facts and such statements shall be admissible as evidence of medical and surgical or other matters therein stated and findings of fact may be based upon such certificates or such reports.

77 P.S. § 835.

4

Claimant was hospitalized, he experienced "episodes of ventricular arrhythmias during the hospitalization, and had positive results for benzodiazepines and negative results for all cardiac stimulants, inclusive of elevated caffeine levels . . . ." (FOF ¶ 17.) Dr. Sing stated that "none of Claimant's treating physicians determined the exact etiology for the cause of the Claimant's 'sudden cardiac [arrest].'" (Id. ¶ 18.) Dr. Sing disagreed with Dr. Khandelwal's conclusions and findings from the medical record, in regards to Claimant's cardiac arrest, as

> there was no evidence of left ventricular dysfunction or underlying cardiomyopathy . . . there was absolutely no evidence of any cardiomyopathy with a consistency to human growth hormone levels or testosterone usage, in contrast to Dr. Khandelwal's statements; and that there was no indication of the Claimant's use of human growth hormones.

(Id.)

Employer presented two reports from medical expert Dr. Khandelwal.[3] The first report from Dr. Khandelwal was based on an evaluation of Claimant dated February 6, 2014. (FOF ¶ 20; R.R. at 218-21.) Dr. Khandelwal opined that Claimant's cardiac arrest was caused by a preexisting mitral valve prolapse and mitral regurgitation (MVP/MR), and it also may have been "potentiated" by the

---

[3] Employer also presented testimony from its Operations Manager (Manager) who was familiar with Claimant and viewed him as a good employee. (FOF ¶ 9.) Manager testified that on August 22, 2013, Employer dispatched Claimant to two assignments and that Claimant completed one assignment before the cardiac event. (Id. ¶ 11.) It was during the second assignment at the airport that Claimant suffered his cardiac arrest. As such, Claimant never picked up the client, and his car was found in the airport parking lot. (Id.) Manager's testimony established that Employer was notified that Claimant had been found unconscious in an elevator at the airport. Manager explained that in order to reach the client, Claimant had the option of either taking the elevator or the stairs to the terminal. (Id. ¶ 12.) Manager indicated that Claimant did not deviate from his assignment at any point, including at the time of the cardiac event, on August 22, 2013. (Id.)

use of supplements and high energy drinks. (FOF ¶ 21; R.R. at 221.) Dr. Khandelwal deemed Claimant to be "fully recovered and [stated that he could] return to his prior position with no restriction." (R.R. at 221.) On August 31, 2014, Dr. Khandelwal issued his second report, which established that Claimant suffers from "underlying structural heart disease as evidenced by his MVP/MR and as a consequence suffered a cardiac arrest potentiated by the use of supplements which are known in themselves to be associated with a higher risk of cardiac arrest." (R.R. at 231.) Dr. Khandelwal also stated that Claimant's cardiac arrest was "entirely unrelated to the Claimant's workplace and entirely related to his preexisting condition." (Id.)

The WCJ issued a Decision on December 3, 2014, denying and dismissing Claimant's Claim Petition. The WCJ held that the medical evidence, particularly from Dr. Sing, was insufficient to satisfy Claimant's burden of proof. (WCJ Decision, Conclusion of Law (COL) ¶ 3.) Specifically, the WCJ concluded that "Dr. Sing's statements did[ not] establish that the Claimant's work activities and/or conditions caused the Claimant's cardiac arrest on August 22, 2013 and/or were a substantial contributing factor to the Claimant's heart attack and disability, with a reasonable degree of medical certainty." (FOF ¶ 19.) The WCJ further stated that none of Claimant's treating physicians were able to determine the "exact etiology for the cause of the Claimant's 'sudden cardiac [arrest].'" (Id. ¶ 18.) Accordingly, the WCJ held that Claimant failed to satisfy his burden of proof "in accordance with the terms of the . . . Act." (COL ¶ 3.)

On December 23, 2014, Claimant appealed the WCJ Decision to the Board. (R.R. at 272-74.) Claimant argued that the "WCJ erred in finding that the opinions of his medical expert, Dr. Sing, failed to establish a causal connection between his

6

work and his condition." (Board Op. at 2.) The Board held that WCJ did not err in finding that the medical evidence presented by Claimant's medical expert, Dr. Sing, was insufficient to satisfy his burden of proof. The Board concluded that although "the cardiac arrest *occurred* while Claimant was performing his job duties," Dr. Sing's opinion was insufficient because it was not *unequivocal medical evidence* that Claimant's cardiac "event *was caused* by Claimant's work duties." (Board Op. at 6 (emphasis in original).) The Board further observed that no evidence or testimony was presented that showed "Claimant had been exerting himself near the time of the cardiac event." (Id.) Claimant also asserted "that the WCJ erred in failing to make credibility determinations regarding the medical testimony." (Id.) The Board disagreed, holding that credibility determinations were unnecessary here because Claimant's medical expert could not provide a sufficient opinion determining the cause of the cardiac event. (Id.) Finally, Claimant argued that "the WCJ erred in failing to award him penalties for [Employer]'s late filing of the NCD." (Id.) The Board found no error in the WCJ's Decision because Claimant was not successful on his Claim Petition, and, thus, no penalties could be awarded even though Employer had violated the Act. (Id.) Claimant petitions this Court for review of the Board's Order.[4]

Here, the question is whether Claimant satisfied his burden of proof on his Claim Petition. Accordingly, we begin by setting forth that burden. Section 306(c) of the Act provides, in pertinent part:

---

[4] "Our review is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated or [whether] an error of law was committed." Haddon Craftsmen, Inc. v. Workers' Comp. Appeal Bd. (Krouchick), 809 A.2d 434, 438 n.2 (Pa. Cmwlth. 2002).

7

(1) The terms 'injury' and 'personal injury', as used in this act, shall be construed to mean an injury to an employe, regardless of his previous physical condition, except as provided under subsection (f), arising in the course of his employment and *related thereto*, and such disease or infection as naturally results from the injury or is aggravated, reactivated or accelerated by the injury; . . . The term "injury arising in the course of his employment," as used in this article, . . . shall include all other injuries sustained while the employe is actually engaged in the furtherance of the business or affairs of the employer, whether upon the employer's premises or elsewhere, and shall include all injuries caused by the condition of the premises or by the operation of the employer's business or affairs thereon, sustained by the employe, who, though not so engaged, is injured upon the premises occupied by or under the control of the employer, or upon which the employer's business or affairs are being carried on, the employe's presence thereon being required by the nature of his employment.

77 P.S. § 411(1) (emphasis added). Thus, in a claim petition, the claimant has the burden of proving all of the necessary elements to support an award. Inglis House v. Workmen's Comp. Appeal Bd. (Reedy), 634 A.2d 592, 595 (Pa. 1993). A claimant must prove that he suffered a work-related injury and that he is disabled from that injury. Sherrill v. Workmen's Comp. Appeal Bd. (Sch. Dist. of Phila.), 624 A.2d 240, 245 (Pa. Cmwlth. 1993).

In cardiac arrest cases where the causal connection between a claimant's employment duties and his injury is not obvious, establishing a connection requires *unequivocal medical testimony*. Haddon Craftsmen, Inc. v. Workers' Comp. Appeal Bd. (Krouchick), 809 A.2d 434, 439 (Pa. Cmwlth. 2002); see also Bethlehem Mines Corp. v. Workmen's Comp. Appeal Bd. (Plutch), 509 A.2d 942, 944 (Pa. Cmwlth. 1986) (stating same and that "the causation requirement in such . . . disability claims is to show that the heart attack occurred within the course of employment and that the employment was the cause thereof"). This Court has stated that:

8

The phrase *"unequivocal medical testimony"* is a shorthand term lawyers and courts have devised and used for the rule of the common law, brought over to the field of workmen's compensation, to the effect that one contending that a condition of disability is the result of injury arising in the course of employment must, unless the disability is clearly the result of a work injury, *produce the expert medical testimony that the claimant's condition in the expert's professional opinion did come from the work experience.* McCrosson v. Philadelphia Rapid Transit Co., . . . 129 A. 568 ([Pa.] 1929); Vorbnoff v. Mesta Machine Co., . . . 133 A. 256 ([Pa.] 1926). See also Fink v. Sheldon Axle & Spring Co., . . . 113 A. 666 ([Pa.] 1921), where the rule was first expressed, but later explained and modified in McCrosson and Vorbnoff. It is not sufficient for the medical witness to testify that the claimant's condition might have been or probably was the result of the claimant's work. However, it is not absolutely essential that the expert say "that it is my professional opinion" and it is sufficient for the expert to say "I think" or "I believe" as the assertion of his opinion. See Elonis v. Lytle Coal Co., . . . 3 A.2d 995 ([Pa. Super.] 1939).

Phila. Coll. of Osteopathic Med. v. Workmen's Comp. Appeal Bd. (Lucas), 465 A.2d 132, 134 (Pa. Cmwlth. 1983) (emphasis added). A cardiac arrest that results from a preexisting condition will not bar a claimant from receiving benefits, so long as he shows with a reasonable degree of medical certainty that his employment duties aggravated the preexisting condition. Matlack, Inc. v. Workmen's Comp. Appeal Bd. (Rennie), 454 A.2d 1172, 1174 (Pa. Cmwlth. 1983) The question of whether a claimant's cardiac arrest occurred within the scope of his employment is a question of law based on factual findings. Haddon Craftsmen, Inc., 809 A.2d at 439.

On appeal, Claimant makes three arguments. First, he argues that the WCJ and the Board "erroneously confused the issues of course of employment and medical causation." (Claimant's Br. at 9.) Second, he argues that the WCJ erred by failing to make credibility determinations regarding the medical evidence. (Id.

9

at 14.)  Lastly, he argues that if the Claim Petition is granted, the Penalty Petition should also be granted because Employer violated the Act by failing to file a timely NCD and must pay penalties.  (Id. at 17.)

Claimant initially argues that the WCJ and the Board improperly combined the two separate and distinct legal issues of "[c]ourse of employment and medical evidence of causal relationship between the 'injury' and disability."  (Id. at 10 (emphasis omitted).)  Claimant disagrees with the WCJ's Decision denying the Claim Petition based on the WCJ's conclusion that Dr. Sing could not identify the cause of Claimant's cardiac arrest because, Claimant argues, the injury is compensable where it unquestionably occurred while he was acting in the course of his employment by picking up a client for Employer.  Claimant's interpretation of Section 301(c)(1) of the Act, 77 P.S. § 411(1), is that *any* "injury" sustained while "engaged in the furtherance of the business or affairs of the employer" is compensable regardless of whether the injury was caused by the claimant's employment activities.  Thus, Claimant argues that, pursuant to Section 301(c)(1), the Claim Petition should have been granted because the cardiac arrest occurred *at* work, even if it was not *because* of work.  Claimant relies on, *inter alia*, this Court's decision in Carroll v. Workers' Compensation Appeal Board (University of Pennsylvania), 750 A.2d 938 (Pa. Cmwlth. 2000), for support of his assertion that "there is no requirement that the injury be 'caused by' the condition of the premises or by the operation of the employer's business." (Claimant's Br. at 11.) Claimant finally contends that the "necessity for medical evidence regarding 'causal relationship' applies to the connection between the injury and disability – not as to the course of employment."  (Claimant's Br. at 10 (citing Fotta v. Workmen's Comp. Appeal Bd. (U.S. Steel/USX Corp.), 626 A.2d 1144 (Pa.

10

1993)).)  Claimant argues that, using this standard, the medical evidence is sufficient because the causal connection between the Claimant's medical condition, his cardiac arrest which occurred while furthering Employer's affairs, and his disability, the loss of wages due to his temporary driving restrictions, is obvious.  (Claimant's Br. at 12.)

Employer argues, citing precedent related to what is required to prove that a cardiac arrest is compensable under the Act, that Claimant's cardiac arrest had to be related to his employment duties.  Employer asserts that Claimant did not prove that his cardiac arrest was related to his employment duties because the etiology or cause of the cardiac arrest remains unknown, and, therefore, there is no unequivocal medical evidence identifying his employment duties as the cause of the cardiac arrest.  Employer further contends that the cases Claimant relies upon, Carroll and Fotta, are distinguishable.

After reviewing the record, we agree with the WCJ and the Board that Claimant failed to meet his burden of proof because he did not present unequivocal medical evidence relating his cardiac arrest to his employment duties.  Here, Claimant was an executive chauffeur for Employer.  There is no dispute that Claimant suffered an "injury" in the form of sudden cardiac arrest that occurred when he entered an elevator at the airport on his way to pick up a client for Employer.  However, as observed by the Board, there was no testimony presented that established that Claimant had been exerting himself near the time of the cardiac arrest,[5] and, therefore, there was no obvious causal relationship between

---

[5] See Villanova Univ. v. Workers' Comp. Appeal Bd. (Mantle), 783 A.2d 366 (Pa. Cmwlth. 2001).  In that case, this Court held that the decedent's heart attack was causally related to his work activities, and thus awarded benefits because claimant's medical expert determined that physical exertion triggered the decedent's fatal heart attack.  The medical expert testified

*(Continued…)*

11

the two. Accordingly, Claimant had to establish that relationship with unequivocal medical evidence. Mensah v. Workers' Comp. Appeal Bd. (Norrell Temp Agency), 716 A.2d 707, 709 (Pa. Cmwlth. 1998). Although Claimant's medical expert, Dr. Sing, stated that Claimant's cardiac event occurred during the course of his employment, Dr. Sing did not provide an unequivocal medical opinion that Claimant's cardiac arrest *was caused by his employment duties*. Instead, Dr. Sing stated that "the etiology of the cardiac arrest remains unclear and hopefully will be ascertained from the medical records." (R.R. at 142). Claimant acknowledges that his treating physicians do not know what "triggered" the cardiac event. (Claimant's Br. at 15.) Thus, Dr. Sing's opinion that the etiology of the cardiac event remains unknown does not establish that "[C]laimant's condition . . . did come from the work experience" and, as such, it is not unequivocal medical testimony that supports causation. Phila. Coll. of Osteopathic Med., 465 A.2d at 134. For these reasons, the WCJ did not err in finding that Claimant's medical evidence failed to prove that Claimant's cardiac arrest was work-related and in denying the Claim Petition.

Neither Carroll nor Fotta require a different result. In Carroll, the claimant was at a meeting with his boss and five other directors at the employer's premises, the claimant felt a sneeze coming on, and attempted to suppress the sneeze because he did not want to spread germs to the others in the meeting. Carroll, 750 A.2d at 941. As a result of his attempt to suppress the sneeze, the claimant's retina detached from his left eye, and he subsequently filed a specific loss claim based on

that, "*what caused his death, his heart attack, his coronary event was a plaque rupture which occurred simultaneously when he was exerting himself in a walking situation almost 400 yards on the way back.*" Id. at 368 (emphasis in original).

12

the loss of that eye. Id. at 940. This Court held that the claimant's eye injury, which the medical expert testified was directly caused by the sneeze and resulted in the loss of the claimant's left eye, was compensable under Section 301(c)(1) of the Act because it occurred while the claimant was engaged in the furtherance of his employer's affairs, and his attempt to suppress the sneeze to avoid spreading germs was not "an action foreign to his employment or an action in abandonment thereof." Id. at 941-42. Claimant argues that simply because the cardiac arrest occurred while he was working and furthering Employer's interests, like the claimant in Carroll, the Claim Petition should be granted. However, unlike in Carroll, the medical experts here could not determine the specific etiology of Claimant's cardiac arrest or its cause, much less relate that cardiac arrest to Claimant's employment. Thus, Carroll is distinguishable.

Fotta likewise is distinguishable and does not support Claimant's assertion that "[t]he necessity for medical evidence regarding 'causal relationship' applies to the connection between the injury and disability – not as to the course of employment." (Claimant's Br. at 10.) In Fotta, the claimant slipped from a machine he was riding at work and fell approximately two feet to the ground. Fotta, 626 A.2d at 1145. In the claim for benefits, the claimant "alleged that he injured his right ankle and foot." Id. After the claim petition was denied based on a conclusion that there was no causal connection between the disability and the incident at work, our Supreme Court reversed. Id. at 1146. The Court initially held that there was "no obvious causal connection between [the claimant's] injured ankle and the fall he suffered at work[,]" as he had been previously experiencing ankle problems. Id. Thus, the Supreme Court held that the only way the claimant could prevail was to present unequivocal medical testimony "establishing that his

13

disability either resulted *from the fall* or that his pre-existing condition *was aggravated by the fall*." Id. (emphasis added). Although the referee had found that the employer's physician, whose testimony was credited, did not opine that the work fall accounted in part for the claimant's disability, the Supreme Court held that this finding was not supported by substantial evidence because that physician had opined that the work-related "traumatic ankle injury" was contributing to the claimant's incomplete recovery from the pre-existing condition. Id. Thus, in Fotta, there was an unequivocal medical opinion that the claimant's disability was partly attributable to his work-related fall and ankle injury. Id. at 1147. Unlike in Fotta where there was a *work-related* fall that, in the unequivocal medical opinion of the credited physician, aggravated a pre-existing injury thereby causing the claimant's disability, there was no unequivocal medical testimony here that establishes that Claimant's cardiac arrest was caused by his work duties. Accordingly, there is no causal connection, partial or otherwise, between Claimant's disability associated with the non-work-related cardiac arrest and cardiac condition and Claimant's employment.

Claimant also argues that, despite his contention that the WCJ erred in not making credibility determinations set forth in his Statement of Questions Involved section of his brief, credibility determinations regarding the medical evidence were not required based on his prior arguments. (Claimant's Br. at 2, 14.) Claimant acknowledges that his physicians do not know what "triggered" the cardiac event, but argues that because he was in the course of employment at the time of his cardiac arrest and there is an obvious causal relationship between his driving restrictions and the cardiac arrest, any disputes between the medical experts' opinions do not impact a determination on the Claim Petition. (Id. at 14.)

14

Although we have rejected Claimant's prior arguments pertaining to what he had the burden of proving on his Claim Petition, we conclude, like the Board, that no harmful error or abuse of discretion occurred in the lack of credibility determinations here because Claimant was not able to produce sufficient medical evidence to support a determination that there was a work-related cause for his cardiac arrest.[6]

Accordingly, we affirm the Board's Order.

_____
**RENÉE COHN JUBELIRER,** Judge

---

[6] We do not reach Claimant's third issue, whether the Board and WCJ erred in failing to award Claimant penalties for Employer's late filing of the NCD, because Claimant did not prevail in the first two issues.

15

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert Hallinan,                          :
                 Petitioner    :
                            :
            v.               :    No. 80 C.D. 2016
                            :
Workers' Compensation Appeal     :
Board (Boston Coach),            :
                 Respondent    :

## **O R D E R**

**NOW**, September 12, 2016, the Order of the Workers' Compensation Appeal Board, entered in the above-captioned matter, is hereby **AFFIRMED**.


                                   _____

                                   **RENÉE COHN JUBELIRER,** Judge