145 Pa. Commonwealth Ct. 433 (1992)
603 A.2d 692
PSFS/MERITOR FINANCIAL, Petitioner,
v.
WORKMEN'S COMPENSATION APPEAL BOARD (WALKER), Respondent.
Commonwealth Court of Pennsylvania.
Submitted December 6, 1991.
Decided February 6, 1992.
*434 William S. Steiger, for petitioner.
Eric L. Segal, for respondent.
Before COLINS and KELLEY, JJ., and NARICK, Senior Judge.
KELLEY, Judge.
PSFS/Meritor Financial (employer) appeals from an order of the Workmen's Compensation Appeal Board (board) which affirmed the decision of the referee granting benefits to Susan Walker (claimant).
Claimant was employed as a proofreader and technician by employer on February 20, 1988, when she sustained an injury to her right ankle, consisting of a partial rupture of her heel cord and a bruised achilles tendon. The injury occurred while claimant was playing in a charity volleyball game for a team sponsored by the PSFS/Meritor Employee Association (employee association).[1] Claimant sought benefits which were awarded by the referee. The injury and disability are not in dispute.[2]
After hearings on claimant's entitlement to workmen's compensation benefits, the referee made eighteen findings of fact and concluded that claimant's injuries occurred while *435 claimant was engaged in the furtherance of business or affairs of her employer, and are compensable under The Pennsylvania Workmen's Compensation Act (Act).[3] Employer appealed to the board, which affirmed the referee in an opinion and order dated June 28, 1991. This appeal followed.
Where the burdened party has prevailed before the referee and the board has taken no new evidence, this court's scope of review is limited to a determination of whether findings of fact necessary to support the adjudication are not supported by substantial evidence, whether constitutional rights were violated, or whether an error of law was committed. City of Harrisburg v. Workmen's Compensation Appeal Board (Gebhart), 118 Pa.Commonwealth Ct. 22, 544 A.2d 1078 (1988). The referee is the ultimate fact finder whose findings, if supported by substantial evidence, must be accepted. Id.
The sole issue presented for our review is whether claimant's injury was sustained while she was actually engaged in the furtherance of the business or affairs of the employer as required by Section 301(c) of the Act.[4] This issue is one of law to be determined on the facts found by the compensation authorities. Feaster v. S.K. Kelso & Sons, 22 Pa.Commonwealth Ct. 20, 347 A.2d 521 (1975).
On appeal, employer argues that claimant's injury is not compensable because she was not injured while participating in an event within the course and scope of her employment. In addition, employer contends that it should escape liability in this case because the employee association facilitated the involvement of the employees without the knowledge of the employer.
We reject employer's conclusion that employees injured while attending such events are not engaged in the furtherance of employer's business or affairs. The phrase "actually engaged in the furtherance of the business or affairs of *436 the employer," which is usually expressed as "in the course of employment," is to be given liberal construction. Tredyffrin-Easttown School District v. Breyer, 48 Pa.Commonwealth Ct. 81, 408 A.2d 1194 (1979).
In Scott v. Workmen's Compensation Appeal Board (Packaging Corp. of America), 113 Pa.Commonwealth Ct. 80, 536 A.2d 492 (1988), we recognized as fundamental that the law has been extended to include off-premise activities.
In Tredyffrin, the claimant, a high school track coach, was injured while hosting a picnic at his home for members of the track team. We held that the claimant's injury was compensable because the employer, which was the school district, encouraged him to participate in extracurricular activities with his students and that his participation in such activities was in furtherance of the employer's interest. We cited Feaster, stating that "[i]n that decision this Court recognized the importance to employers of social events which sustain good relationships with and the morale of their employees." Tredyffrin, 48 Pa.Commonwealth Ct. at 84, 408 A.2d at 1195.
In Scott, we held that injuries sustained by an employee while playing softball on a team sponsored by his employer occurred while the employee was engaged in the furtherance of the business or affairs of employer, and were compensable under the Act.
We believe the rationale applied in Tredyffrin and Scott is controlling of the set of facts presently before us. All of the witnesses provided testimony that indicates that the employer facilitated the existence of the employee association, supported its activities and received indirect and direct benefits as a result of the participation of its employees. For example, Geraldine Speath, assistant vice-president for employer, testified as follows:
Q. Now, do you pay any dues for the Employee Association?
Y. Yes.

*437 Q. How do you pay those dues?
A. By payroll deduction.
Q. Does the company have payroll deduction for other things other than the Employees Association?
A. Yes.
Q. Such as?
A. United Way Charity.
Reproduced Record (R.) at 69a.
Q. Why do they have this Employee Association? In your own mind you don't know, obviously, but why do you think they have this Employee Association?
A. I guess to build camaraderie.
Q. For everyone to be happy, one happy family; is that correct?
A. Perhaps.
Q. Do you know if the Employees Association sponsors a softball team or bowling team or other things for Meritor Bank?
A. Yes.
R. at 71a-72a.
Q. To build camaraderie, you would want your employees to take part in these volleyball games or other company sponsored events, wouldn't you?
A. Probably.
R. at 73a.
Estelle DeVan, an administrative assistant for employer and president of the PSFS/Meritor Employee Association in 1988, testified as to the relationship between the employee association and the employer:
Q. If the Employee Association tried to do something adverse to the company's interest, they wouldn't let you do it; is that correct? The company wouldn't let you do it; is that correct?

*438 A. Right.
R. at 52a.
Q. The Employee Association for the purpose of the Meritor employees sponsored the volleyball game; is that correct?
A. Yes.
Q. In fact, the thing in the bulletin which has been marked D-1 and C-1 says the Meritor Employees Association is looking for volunteers to play for the Easter Seal fund; is that correct?
A. Yes.
Q. You got two teams going together, Meritor teams; is that correct?
A. Yes.
Q. They were given T-shirts and this is by the Employee Association?
A. Yes.
Q. What do the T-shirts say on the front?
A. PSFS Employees Association.
Q. And PSFS is Meritor?
A. Yes.
R. at 53a-54a.
Based upon our review of the record, it appears that the activities of the employee association are well known to the employer. Furthermore, there is evidence in the record that shows that claimant's participation in the game was with employer's permission. First, notice of the event was published in the company bulletin. Second, claimant asked her supervisor and a company vice-president if they would sponsor her in the event. Third, claimant testified that a vice-president of the employer had asked her to participate in the event.
Surely, the positive public image created by identifiable company participants in charitable community activities is both sought after and an undeniable goal of employer. Because of this and because the evidence indicates that claimant's participation was with employer's permission, we *439 believe the referee's conclusion that claimant was injured while furthering the business or affairs of employer is consistent with the caselaw regarding off-premise injuries.
Therefore, we affirm the order of the board.

ORDER
NOW, this 6th day of February, 1992, the order of the Workmen's Compensation Appeal Board, No. A-892699, dated June 28, 1991, is hereby affirmed.
NOTES
[1] Potential team members became aware of the volleyball game pursuant to a squib in the Meritor Bulletin, an employer publication, seeking volunteer volleyball players to play for the Easter Seal Fund.
[2] Claimant testified before the referee that she was asked to participate in the volleyball tournament by her immediate supervisor.
[3] Act of June 2, 1915, P.L. 736, as amended, 77 P.S. § 1  1031.
[4] 77 P.S. § 411(1).