Eric DANDENAULT, Petitioner,

v.

WORKERS' COMPENSATION APPEAL BOARD (PHILADELPHIA FLYERS, LTD. and National Union/A.I.G.), Respondents.

Philadelphia Flyers, Ltd., Petitioner

v.

Workers' Compensation Appeal Board (Dandenault), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 29, 1999.

Decided April 13, 1999.

Edward J. Abes, Pittsburgh, for petitioner.

Eugene N. McHugh, Harrisburg, for respondent.

Before McGINLEY, J., FLAHERTY, J., and RODGERS, Senior Judge.

RODGERS, Senior Judge.

In these consolidated cross-appeals, Eric Dandenault (Claimant) and Philadelphia Flyers, Ltd., (Employer) petition for review of the June 26, 1998 order of the Workers' Compensation Appeal Board (Board) that affirmed the decision of a workers' compensation judge (WCJ) granting Claimant's claim petition.[1] We reverse.

Claimant, a professional hockey player, played for the Hershey Bears Hockey Club, Employer's American Hockey League team, pursuant to the terms of a three-year contract with Employer governing the 1991–92, 1992–93 and 1993–94 hockey seasons.[2] On August 22, 1995, Claimant filed a claim petition against Employer seeking compensation for an injury to his left abdomen/groin that occurred while Claimant was playing hockey in Sherbrooke, Quebec on August 23, 1993. The petition alleges that Claimant sustained the injury while he was practicing to remain in physical playing condition, prior to the start of summer training. Employer filed an answer on January 2, 1996 and the case was assigned to a WCJ.[3]

Claimant testified that he received his full salary for the 1992–93 season. Claimant was paid every two weeks and he received his last check for that season in October of 1993. Claimant also played during the 1993–94 season and, although he did not play during the playoffs in April of 1994, he received his full salary plus his share of the playoff bonus. Pursuant to an agreement signed by the parties in July of 1993, Claimant's employment relationship with Employer was to ter-

---

1. This Court consolidated the cross-appeals *sua sponte* by order dated August 5, 1998.

2. The contract set forth the salary Claimant would receive if he made Employer's National Hockey League team and a lower salary to be paid if Claimant played in the American Hockey League.

3. Claimant had previously filed a claim petition against the Hershey Bears, alleging that he sustained an injury during summer training at the Hershey Bears training camp. The two petitions were consolidated, and the WCJ dismissed the petition against the Hershey Bears in his decision of June 19, 1996.

minate at the end of the 1993–94 season; Claimant's salary for that season was paid from October 1993 through April 10, 1994.

Claimant testified that pain from his August 1993 injury prevented him from participating in the 1994 spring playoffs. Claimant stated that he had made arrangements to play roller blade hockey during the summer of 1994 with a professional team in San Diego, California, which had arranged for an apartment for Claimant and paid for his airfare. Claimant testified that he did not play during that off-season because his doctor had advised against it.[4]

Claimant testified that he had no problems with his groin after the summer of 1994. Beginning in September of 1994, Claimant played hockey for a European team for the 1994–95 season and he worked at a golf course during the summer of 1995. At the time of the January 29, 1996 hearing, Claimant was playing professional hockey for a team in the Colonial League.

With regard to the circumstances of his injury, Claimant testified that during the summer of 1993 he was playing hockey near his home in Canada for no wages, in order to get in shape for the upcoming season. Claimant stated that he also worked out in a gym, went running and "did stairs," in order to stay in condition. When asked about the provision of the employment contract that prohibits a player from engaging in any sports activities without Employer's written consent, Claimant conceded that he did not have Employer's permission to be playing hockey at the time of his injury.[5] However, Claimant stated that all professional hockey

players play summer hockey to stay in shape and he believed that management knew this.

The WCJ first found that Employer had failed to file a timely answer, and, therefore, the allegations in the claim petition are deemed admitted pursuant to Section 416 of the Workers' Compensation Act (Act).[6] Claimant's petition alleged that the injury occurred: "While practicing to remain in physical condition prior to the start of summer training engaged in a hockey game during which he injured his lower abdomen." (Reproduced Record, p. 2a). Based upon these allegations and Claimant's testimony, the WCJ issued the following relevant Findings of Fact:

12. Claimant was playing hockey at home to get in shape for the Flyers. The contract requires that claimant arrive in shape. Claimant played in a league but not for wages. Claimant also worked out at the gym, ran, and did stairs. Claimant was under contract to the Flyers in August, 1993.

* * * *

19. Claimant did not have permission of the Flyers to play in the summer league in reference to the paragraph on page 9, 42C and Paragraph 7 on page 5 of the standard contract.

20. Claimant was able to play fully by the fall of 1994 up to his capabilities.

21. Claimant noted that all NHL players play summer hockey to get in shape. Claimant felt that management knew this. If you did not play, Claimant felt you could not be in shape to make the team.

4. In his claim petition, Claimant sought total disability compensation from August 28, 1993 through August of 1994, and partial disability benefits from August of 1994 to the present. However, during the January 29, 1996 hearing, Claimant's counsel clarified that Claimant sought wage loss benefits only for a closed period during the summer of 1994, based on Claimant's inability to play roller blade hockey in San Diego. (N.T. 51 – 52).

5. Paragraph 7 of the employment contract states as follows:
The Player and the Club recognize and agree that the Player's participation in other sports

may impair or destroy his ability and skill as a hockey player. Accordingly the Player agrees that he will not during the period of this Contract or during any period when he is obligated under this Contract to enter into a further contract with the Club engage or participate in football, baseball, softball, hockey, lacrosse, boxing, wrestling or other athletic sport without the written consent of the Club, which consent will not be unreasonably withheld. (Exhibit D–1).

6. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 821.

\* \* \* \*

23. Claimant had an inguinal hernia on August 23, 1993. At the time of the injury, Claimant was playing the Sherbrook League in Quebec, Canada, as set forth in the claim petition.

(WCJ's decision, pp. 4 – 5).

In his discussion of the issues, the WCJ stated as follows:

The question is whether the injury occurred in the scope of employment. There are cases of people doing activities and becoming injured, which activities redound to the benefit of the employer, such as the life guard swimming to maintain his red cross certification. In any performance activity it is important that the performer maintain his skills. It also aids the employee to maintain skills in a job where the amount of pay is directly related to making the team. *I do not think there was any supervision or control by the employer in playing in the summer league. I think that was done for the benefit of the employee and not for the employer. But the deemed admitted part of the Act seems to me to make that issue moot.* While there was additional evidence taken, it did not really impact on the admitted claim petition. The claimant maintained all along that he did this with the knowledge of the employer and for the employer's benefit. Therefore, it appears to me that claimant has met the elements of establishing an injury.

(WCJ's decision, pp. 5 – 6) (emphasis added). The WCJ found that Claimant had lost no wages, however, characterizing Claimant's lost income during the summer of 1994 as a loss of potential future wages that is not compensable, as distinguished from a wage loss from concurrent employment.

The WCJ concluded that the activities of a claimant undertaken to remain in condition and to keep and improve the skills necessary

to perform his job are within the scope of employment. The WCJ granted Claimant's claim petition, but awarded no compensation for lost wages. The WCJ terminated benefits as of January 29, 1996, the date of Claimant's testimony.[7]

Both parties appealed to the Board, which affirmed the WCJ's decision. The Board concluded that substantial evidence supported the WCJ's determination that Claimant's injury occurred within the course of his employment. The Board also agreed that Claimant had suffered no wage loss, because Claimant's plans to play roller blade hockey did not constitute concurrent employment as defined by Section 309(e) of the Act, 77 P.S. § 582(e).

On appeal to this Court,[8] Claimant argues that the WCJ erred in concluding that he suffered no loss of wages. Claimant also contends that the WCJ erred in terminating benefits in the absence of medical evidence from Employer that he had fully recovered. In its cross-appeal, Employer argues that the WCJ erred in concluding that Claimant's injury occurred within the scope of his employment. Employer asserts that the WCJ misconstrued Section 416 of the Act and failed to undertake an independent evaluation of the evidence to determine whether the record supports this conclusion of law.

■■■ Section 416 of the Act provides that, where an employer fails to file a timely answer without adequate excuse, every fact alleged in a claim petition shall be deemed admitted. The failure to file a timely answer precludes an employer from presenting any evidence in rebuttal or as an affirmative defense with respect to those alleged facts; the WCJ may only consider the allegations set forth in the claim petition and any additional evidence presented by the claimant. *Greeley v. Workmen's Compensation Appeal Board (Matson Lumber Co.),* 167 Pa.Cmwlth. 209, 647 A.2d 683 (1994), *appeal granted,* 540 Pa.

7. Since the WCJ's Finding of Fact # 20 indicates that he found Claimant had fully recovered from his injury by the Fall of 1994, it is not clear why the WCJ terminated benefits as of this later date.

8. Our scope of review in a workers' compensation appeal is limited to determining whether an

error of law was committed, constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America),* 121 Pa.Cmwlth. 436, 550 A.2d 1364 (1988).

607, 655 A.2d 994 (1995); *Yellow Freight System, Inc. v. Workmen's Compensation Appeal Board,* 56 Pa.Cmwlth. 1, 423 A.2d 1125 (1981).

■ However, this Court has made clear that an employer's failure to file a timely answer is not the equivalent of a default judgment. *Heraeus Electro Nite Co. v. Workmen's Compensation Appeal Board (Ulrich),* 697 A.2d 603 (Pa.Cmwlth.1997), *appeal granted,* 551 Pa. 431, 710 A.2d 1139 (1998), and *appeal dismissed,* 554 Pa. 512, 721 A.2d 1095 (1999).[9] The WCJ's authority and discretion to determine the weight and credibility of evidence are not terminated merely because the employer is precluded from presenting evidence. *Greeley.* Under these circumstances, the WCJ remains duty bound to determine whether the totality of the evidence is legally sufficient to satisfy the claimant's burden of proof. *Id.*

■ In an original claim petition, the claimant bears the burden of proving that an injury arose in the course of his employment and is related thereto. *DePrimo v. Workmen's Compensation Appeal Board (Affiliated Food Distributors),* 661 A.2d 37 (Pa. Cmwlth.1995). The question of whether an employee is acting within the course of his employment at the time of his injury is a question of law to be resolved based on the WCJ's findings of fact. *Nevin Trucking v. Workmen's Compensation Appeal Board (Murdock),* 667 A.2d 262 (Pa.Cmwlth.1995).

An injury arises in the course of employment when it occurs "while the employe is actually engaged in the furtherance of the business or affairs of the employer, whether upon the employer's premises or elsewhere...." Section 301(c)(1) of the Act, 77 P.S. § 411(1). Although this language is to be liberally construed, *Tredyffrin–Easttown School District v. Breyer,* 48 Pa.Cmwlth. 81, 408 A.2d 1194 (1979), we conclude that the WCJ's findings do not support the conclusion

that Claimant was injured in the course of his employment.

■ As reflected by the WCJ's findings, Claimant was required to report to Employer's training camp in good physical condition. Playing hockey in a summer league was only one of several activities Claimant engaged in to remain in shape during the off-season. While Claimant stated that all professional hockey players engage in summer hockey, and he believed Employer was aware of that fact, Claimant did not establish that he was either required or encouraged to play summer hockey. To the contrary, Claimant conceded that his injury occurred while he was engaged in a sports activity without Employer's permission and in violation of the terms of his contract. We conclude that these facts are clearly distinguishable from the facts of cases in which the courts have upheld awards of compensation to claimants injured during recreational, athletic or other off-duty activities. *See, e.g., City of Harrisburg v. Workmen's Compensation Appeal Board (Gebhart),* 532 Pa. 592, 616 A.2d 1369 (1992) (police officer shot while unholstering service revolver after returning home from work was performing his duties to secure and store his weapon); *Stanner v. Workmen's Compensation Appeal Board (Westinghouse Electric Co.),* 146 Pa.Cmwlth. 92, 604 A.2d 1167 (1992), *appeal denied,* 532 Pa. 659, 615 A.2d 1314 (1992) (employee injured while using employer-operated gym with employer's encouragement); and *PSFS/Meritor Financial v. Workmen's Compensation Appeal Board (Walker),* 145 Pa.Cmwlth. 433, 603 A.2d 692 (1992) (injured employee had participated in charity volley ball game with employer's permission and encouragement).

■ As previously stated, the determination of whether a claimant's injury arose in the course of his employment must be based upon the WCJ's findings of fact. Here, the WCJ ignored the relevant facts, including his assessment that Claimant's activity was not in furtherance of Employer's

---

9. For example, in *Heraeus* we explained that Section 416 does not bar an employer from presenting rebuttal evidence with regard to facts not specifically alleged in the claim petition. Thus, in this case, Employer was able to enter the employment contract into evidence to rebut

Claimant's testimony regarding lost wages and the terms and conditions of his employment. We also note that this exhibit was made part of the record at the suggestion of Claimant's counsel and that Claimant relies on this evidence in his appeal to this Court.

business or affairs, and based his award on the erroneous belief that the provisions of Section 416 render this issue moot. While Section 416 provides a claimant the advantage of establishing certain facts, it does not operate to automatically satisfy a claimant's burden of proof. *Greeley.* In *every* claim proceeding, the claimant bears the burden of proving *all* elements necessary to support an award of compensation. *Inglis House v. Workmen's Compensation Appeal Board (Reedy),* 535 Pa. 135, 634 A.2d 592 (1993).

We conclude that the evidence presented by Claimant is insufficient to establish that his injury arose in the course of his employment and, accordingly, we reverse.[10]

### ORDER

NOW, April 13, 1999, the order of the Workers' Compensation Appeal Board, at No. A96–2422, dated June 26, 1998, is reversed.

---

**10.** Having so decided, we do not address the remaining issues raised in these appeals.