IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Qian Hu Zhang, : 
               Petitioner : 
         : No. 1674 C.D. 2018
       v. : 
         : Submitted: June 21, 2019
Workers' Compensation Appeal : 
Board (Chopstix 4041, LLC and : 
Uninsured Employer Guaranty Fund), : 
               Respondents : 

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
             HONORABLE PATRICIA A. McCULLOUGH, Judge
             HONORABLE MICHAEL H. WOJCIK, Judge

*__OPINION NOT REPORTED__*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                  FILED: August 2, 2019

Qian Hu Zhang (Claimant) petitions for review from the November 30, 2018 order of the Workers' Compensation Appeal Board (Board) affirming the decision of a workers' compensation judge (WCJ), which denied multiple claim petitions filed by Claimant pursuant to the Workers' Compensation Act (Act).[1]

**Facts and Procedural History**

On November 18, 2015, Claimant filed a claim petition alleging that he sustained a work-related injury on October 3, 2015, while employed by Yong Zheng. The claim petition alleged that Claimant sustained a broken right foot and pain in his

_____
[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2710.

right ankle and foot when he fell off a wooden ladder at his work site, which rendered him disabled. On March 3, 2016, Claimant filed a claim petition for benefits from the Uninsured Employers Guaranty Fund (UEGF), alleging that his purported employer, Yong Zheng, was uninsured. Subsequently, on July 14, 2016, Claimant filed a claim petition alleging that he sustained the October 3, 2015 injury while employed by Chopstix 4041, LLC, (Chopstix). On October 5, 2016, Claimant filed a second claim petition for benefits from the UEGF, alleging that Chopstix was uninsured.

Claimant first testified before the WCJ in March 2016. Claimant, who resides in Philadelphia, Pennsylvania, stated that he had worked on three different construction jobs for Mr. Zheng. All three jobs occurred at restaurants and involved rehabilitation, plumbing, electrical, painting, and drywall work. The jobs were physical and required Claimant to lift and carry construction materials. (WCJ's Findings of Fact (F.F.) No. 1(a); Notes of Testimony (N.T.), 3/29/16, at 6, 8-10, 12-13.)

Claimant stated that on October 3, 2015, he was working for Mr. Zheng at a job in Erie, Pennsylvania. Claimant worked in Erie for approximately two months. Claimant testified that prior to working on the Erie job, he had worked for Mr. Zheng in New Jersey for one month and in Chinatown, Philadelphia, for ten days. Claimant was paid $150.00 per day, as well as three daily meals and dormitory housing, on the Erie job. On October 3, 2015, Claimant was on a roof helping to move ventilation equipment and was standing on a ladder that was slippery due to rain. Claimant fell off the ladder a "distance of his height plus one foot," landing on his right foot. As a result of the fall, Claimant was not able to stand up and experienced pain in his right leg and entire body. (F.F. No. 1(b)-(c); N.T., 3/29/16, at 5-6, 11, 15-22.)

Claimant testified that Mr. Zheng was present at the job site on October 3, 2015. He claimed that Mr. Zheng and another individual, Mr. Huang, directed his work at the Erie restaurant. Specifically, Mr. Zheng and Mr. Huang provided Claimant

2

with the drywall he was hanging. After Claimant fell off the ladder, he informed Mr. Zheng and Mr. Huang about what had happened. Claimant was unable to work the rest of the day and the following day was driven back to Philadelphia by Mr. Zheng. (F.F. No. 1(d)-(e); N.T., 3/29/16, at 23-25.)

After returning to Philadelphia, Claimant visited a hospital and wore a cast on his leg for two months. Claimant stated that at the time of the hearing he was receiving physical therapy twice a week and that he was still experiencing pain in his right leg and heel and was having difficulty walking. He did not believe that he could return to his pre-injury construction job because it was demanding physical work and he was at that time unable to lift or crawl. Claimant testified that he had recently done a painting job for a friend, because he had no income, and had earned $70.00. (F.F. No. 1(f)-(i); N.T., 3/29/16, at 26-31.)

During cross-examination, Claimant testified that Mr. Shi was the owner/boss of the Erie restaurant. Claimant stated that Mr. Zheng paid him on the Erie job and that Mr. Zheng paid him in cash. He explained that there were four people working on the Erie job, including Mr. Zheng. He stated that Mr. Zheng had hired him for the Erie job, he had worked for Mr. Zheng on previous jobs, and that Mr. Zheng had paid him on the earlier jobs. However, Claimant noted that Mr. Huang had paid him on the Chinatown job. Although Claimant testified that Mr. Shi was the owner of the restaurant, he claimed that he only worked for Mr. Zheng and that he was unsure of the relationship between Mr. Zheng and Mr. Shi. (F.F. No. 1(j); N.T., 3/29/16, at 36-39.)

Mr. Zheng testified before the WCJ in June 2016. Mr. Zheng identified Claimant as a co-worker and colleague, noting that he had worked together with Claimant on three separate jobs in New Jersey, Philadelphia, and Erie. Mr. Zheng claimed that he had never employed Claimant and that he never saw Claimant get paid for any of his work. Mr. Zheng explained that the Erie job was at a restaurant and that

3

he performed reconstruction and remodeling work. He stated that he was hired by Lee Wei, the restaurant owner, and that Mr. Wei hired two or three other individuals, including Claimant. (F.F. No. 4(a), (c); N.T., 6/30/16, at 8-10.)

Mr. Zheng stated that he knew Claimant from a previous job. Mr. Zheng testified that he got the job in Erie through his friend, Mr. Shi, who knew the owner of the restaurant. He was unsure how Claimant got that job. He explained that there is a billboard in Chinatown where jobs are posted for laborers and that he often finds remodeling jobs through the billboard, but that he did not know if the Erie job was posted on the billboard. Mr. Zheng testified that he does not own or operate any businesses or corporations and that he had never hired Claimant for any jobs. Mr. Zheng stated that he did not see Claimant fall at the Erie job site. (F.F. No. 4(d); N.T., 6/30/16, at 10-14, 16.)

On cross-examination by counsel for the UEGF, Mr. Zheng testified that he did not assign any work to Claimant, did not set Claimant's hours, and was not Claimant's boss or foreman on the Erie job. Mr. Zheng also stated that he does not have any employees and that the restaurant owner, Mr. Wei, paid him on the Erie job. When asked the name of Mr. Wei's restaurant, Mr. Zheng replied, "Something like Quiet, Quiet something, means like Chopsticks something." Mr. Zheng was also asked about the address of the restaurant, but could only remember that it was located on Buffalo Road in Erie. Mr. Zheng explained that he got the Erie job through a friend, that he lived with Claimant during the Erie job, and that Mr. Wei paid both him and Claimant for their work on the Erie job. Mr. Zheng explained that Mr. Wei told him what he needed to do on the Erie job, including "where he need[ed] to report" and "where he need[ed] to paint." Mr. Zheng also noted that Mr. Wei provided the housing in Erie. (F.F. No. 4(h); N.T., 6/30/16, at 17-20.)

Mr. Zheng was also cross-examined by Claimant's counsel. Mr. Zheng testified that Mr. Shi told him about the Erie job and put him in contact with Mr. Wei.

4

Mr. Zheng said that he had no way of contacting Mr. Shi or Mr. Wei because he lost their phone numbers. Regarding Mr. Wei's restaurant, Mr. Zheng again stated he could only remember that it was located on Buffalo Road and was named "Chopsticks something." Mr. Zheng stated that Mr. Huang supervised him on previous jobs, and that although Mr. Huang worked on the Erie job, Mr. Huang did not supervise him on that job. Mr. Zheng was unsure if Mr. Huang had ever directed Claimant's work. Additionally, Mr. Zheng explained that Mr. Wei asked him to drive Claimant to Erie, but that he was unsure how Claimant got the job in Erie or how Mr. Wei knew Claimant. (F.F. No. 4(i); N.T., 6/30/16, at 20-22, 25-26, 30-33.)

The UEGF presented the deposition testimony of Daniel Ryan, a licensed private investigator and certified forensic accountant. As a forensic accountant, Mr. Ryan conducts background checks, pre-employment screening, and searches to determine whether a person is an undocumented worker. In this regard, he performs background checks by using the information provided to him in order to determine whether an individual is a documented worker and to verify the individual's identity and eligibility to work legally. Mr. Ryan uses certain databases to corroborate Social Security numbers (SSN) that are provided to him or that he finds during his research. The databases enable Mr. Ryan to "ascertain or look up" SSNs for individuals by inputting a SSN that has been provided to him in order to see to whom that number has been assigned. (F.F. Nos. 7(a)-(c); N.T., 5/4/17, at 21, 23-24, 26-27, 34, 38.)

Mr. Ryan completed an affidavit detailing the search he conducted of Claimant. Mr. Ryan testified that he obtained an alleged SSN for Claimant from counsel for UEGF, who in turn had obtained the SSN from Claimant's Workers' Compensation Automation and Integration System (WCAIS) sheet. When Mr. Ryan entered the SSN provided to him into the database, he discovered that the number was not associated with Claimant, but rather, had been issued between 1964 and 1966 to a different individual in New York. Mr. Ryan also performed a general search for a SSN

5

associated with Claimant. However, when he searched for Claimant's name, approximate date of birth, and address, he did not find any SSN for Claimant. Mr. Ryan testified that, based on his research, he could not establish any evidence to indicate Claimant had a valid SSN. Mr. Ryan also stated that, in his experience, individuals are typically issued SSNs for employment purposes. (F.F. Nos. 7(b), (d)-(f); N.T., 5/4/17, at 30, 43-50, 53.)

On cross-examination by Claimant's counsel, Mr. Ryan admitted that he does not have any personal knowledge of what an employee ID number is, for the purpose of the WCAIS. Mr. Ryan was also unaware that an employee ID number is not a SSN, but instead, is a number generated by the WCAIS. He acknowledged that if it turned out the employee ID number he used to generate his search was not, in fact, Claimant's SSN, it might change his opinions. Yet, Mr. Ryan stated that although it would change the first aspect of his report, *i.e.*, whether the number that had been provided was associated with Claimant, it would not change his second conclusion that, based on Claimant's name, address, and date of birth, he could not establish any evidence a SSN had been issued to Claimant.[2] (F.F. No. 7(g); N.T., 5/4/17, at 59-68.)

The WCJ found Claimant's testimony credible that he sustained injuries to his right foot when he fell off a ladder, but did not find Claimant's testimony credible that Mr. Zheng was his employer. In contrast, the WCJ found Mr. Zheng's testimony credible that he did not hire Claimant for any jobs, but instead, that they were co-workers, and that Mr. Zheng was supervised on the Erie job by Mr. Wei, the restaurant owner. The WCJ noted that she had observed both Claimant and Mr. Zheng testify and

---

[2] Claimant objected to Mr. Ryan's deposition testimony on the grounds that Mr. Ryan's opinions regarding Claimant's WCAIS ID number were incompetent as a matter of law, that Mr. Ryan's opinions regarding whether Claimant was issued a valid SSN were irrelevant, and that Mr. Ryan's testimony on whether Claimant was a documented worker was beyond the scope of his expertise and expert report. The WCJ sustained Claimant's objection to Mr. Ryan's testimony about Claimant's WCAIS ID number, but overruled all other objections.

6

"found the testimony of Mr. Zheng credible that he never employed Claimant based on [her] observation" of both of the witnesses. (F.F. No. 10.) The WCJ also observed that Claimant "made several references to his boss during his testimony and then explained that he meant the owner of the restaurant." *Id.*

The WCJ also determined that Claimant was not employed by Mr. Wei or Chopstix because "Claimant's work was not in the regular course of the business of Chopstix." (F.F. No 11.) The WCJ noted that where a restaurant owner is not in the construction business and merely reserves control as to the result of a contract, without directing the manner in which the work is completed or controlling the means of accomplishing the contract, there exists a contractor/contractee employment relationship instead of a master/servant relationship. The WCJ also found that "[t]here was no testimony or evidence submitted that the restaurant where Claimant was injured was Chopstix or that Mr. Wei was the owner of Chopstix." *Id.* Additionally, the WCJ found Claimant failed to identify an employer and that Claimant had worked odd jobs for cash that he obtained through word of mouth or from a posting on a billboard in Philadelphia. (F.F. No. 12.)

The WCJ also found the testimony of Mr. Ryan credible that Claimant was an undocumented worker. The WCJ explained that Mr. Ryan's testimony was based on his expertise identifying undocumented workers, that Mr. Ryan performed a valid SSN search using Claimant's name, date of birth, and address, and that Claimant did not rebut the testimony of Mr. Ryan with any identification or documentary evidence to establish that Claimant was a documented worker. (F.F. No. 13.)

The WCJ concluded that Claimant had not met his burden of proving that he was an employee of either Mr. Zheng or Chopstix. Accordingly, the WCJ determined that although Claimant sustained his burden of demonstrating that he suffered a work injury, which rendered him disabled from October 3, 2015, until February 7, 2017, when he was released to sedentary work, Claimant was not entitled

7

to wage loss or medical benefits because he had not proven an employment relationship. The WCJ also concluded that the purported employer "sustained its burden that Claimant was an undocumented worker." (WCJ Conclusions of Law Nos. 2-5.) Thus, the WCJ denied Claimant's claim petitions and UEGF claims for benefits.

Claimant appealed the decision and order of the WCJ to the Board. On November 30, 2018, the Board affirmed the WCJ's decision and order. The Board noted that Claimant's testimony identifying Mr. Zheng as his employer was not credited by the WCJ and, therefore, that Claimant did not meet his burden of demonstrating an employment relationship with Mr. Zheng. (Board decision at 6.) Conversely, the Board observed that the WCJ credited Mr. Zheng's testimony and, specifically, Mr. Zheng's testimony that both he and Claimant were hired by Mr. Wei. The Board determined that although on appeal Claimant argued that Mr. Wei and Chopstix were one and the same, Mr. Wei was not a named party and did not testify, Claimant's argument disregarded the identification of Chopstix as a corporation, and the only evidence linking Mr. Wei to Chopstix was Mr. Zheng's testimony that the restaurant was called "Chopsticks something" and was located on Buffalo Road in Erie. (Board decision at 7.) The Board concluded that Mr. Zheng's credited testimony was not substantial evidence establishing an employment relationship between Claimant and the named defendant, Chopstix. *Id.* Consequently, the Board held that the WCJ did not err in denying the claim petitions.[3]

---

[3] Because the Board determined that Claimant did not establish an employer/employee relationship with either Mr. Zheng or Chopstix, it did not address whether the WCJ erred in concluding that Claimant was an undocumented worker. (Board decision at 8.)

8

Claimant now petitions for review of the Board's order,[4] arguing (1) the WCJ erred in determining that Claimant was not employed by Chopstix; (2) Claimant is entitled to benefits pursuant to the Construction Workplace Misclassification Act (CWMA)[5]; (3) the WCJ and Board erred in concluding Claimant was not employed by Chopstix given that Chopstix failed to file a timely answer to Claimant's allegation in its claim petition that Chopstix was his employer; and (4) the WCJ erred in determining that the UEGF met its burden of proving that Claimant was an undocumented worker.

**Analysis**

Initially, we note that in a proceeding on a workers' compensation (WC) claim petition, the claimant bears the burden of proving all the elements necessary to support an award of benefits. *Zuchelli v. Workers' Compensation Appeal Board (Indiana University of Pennsylvania)*, 35 A.3d 801, 804 (Pa. Cmwlth. 2011). This includes proving the existence of the employer/employee relationship. *Universal Am-Can, Ltd. v. Workers' Compensation Appeal Board (Minteer),* 762 A.2d 328, 330 (Pa. 2000). Thus, an independent contractor is not entitled to WC benefits due to the absence of a master-servant relationship. *Id.* Whether an employer/employee relationship exists is a question of law that is determined on the unique facts of each case. *American Road Lines v. Workers' Compensation Appeal Board (Royal)*, 39 A.3d 603, 610 (Pa. Cmwlth. 2012).

---

[4] Our scope of review is limited to determining whether findings of fact are supported by substantial evidence, whether an error of law has been committed, or whether constitutional rights have been violated. Section 704 of the Administrative Agency Law, 2 Pa.C.S. §704; *Meadow Lakes Apartments v. Workers' Compensation Appeal Board (Spencer)*, 894 A.2d 214, 216 n.3 (Pa. Cmwlth. 2006).

[5] Act of October 13, 2010, P.L. 506, 43 P.S. §§933.1-933.17.

9

We first address whether the WCJ and Board erred in concluding that Chopstix was not Claimant's employer due to Chopstix's failure to answer the claim petition. Claimant essentially argues that because it alleged in the claim petition that Chopstix was his employer, and Chopstix failed to answer the claim petition, Claimant's allegation that Chopstix is his employer is deemed admitted.

It is well-established that in WC matters, "[e]very fact alleged in a claim petition not specifically denied by an answer so filed by an adverse party shall be deemed to be admitted by him." Section 416 of the Act, 77 P.S. §821; *see also Yellow Freight System, Inc. v. Workmen's Compensation Appeal Board*, 423 A.2d 1125, 1127 (Pa. Cmwlth. 1981) (same). Further, "[i]f a party fails to file an answer and/or fails to appear in person or by counsel at the hearing without adequate excuse, the referee hearing the petition shall decide the matter on the basis of the petition and evidence presented." Section 416 of the Act, 77 P.S. §821; *see also Yellow Freight System*, 423 A.2d at 1127 (same).

However, a claimant has the burden of proving *all elements* required for an award of WC benefits, including that the injury arose in the course of employment and was causally related thereto. *See Neidlinger v. Workers' Compensation Appeal Board (Quaker Alloy/CMI International)*, 798 A.2d 334, 338 (Pa. Cmwlth. 2002). Accordingly, "an employer's failure to file a timely answer to a claim petition does not operate to automatically satisfy a claimant's burden of establishing entitlement to benefits." *Id.* Moreover,

> [A]n employer's failure to file a timely answer is not the equivalent of a default judgment. . . . The WCJ's authority and discretion to determine the weight and credibility of evidence are not terminated merely because the employer is precluded from presenting evidence. . . . Under these circumstances, the WCJ remains duty bound to determine whether the totality of the evidence is legally sufficient to satisfy the claimant's burden.

10

*Dandenault v. Workers' Compensation Appeal Board*, 728 A.2d 1001, 1005 (Pa. Cmwlth. 1999). This Court has consistently held that conclusions of law, such as whether an employment relationship exists, cannot be deemed admitted by an untimely answer and must still be proven by the claimant. *See Bensing v. Workers' Compensation Appeal Board (James D. Morrissey, Inc.)*, 830 A.2d 1075, 1077-78 (Pa. Cmwlth. 2003); *Neidlinger*, 798 A.2d at 338; *Chik-Fil-A v. Workers' Compensation Appeal Board (Mollick)*, 792 A.2d 678, 688 (Pa. Cmwlth. 2002). As pertains to the instant matter, "[f]ailure of the uninsured employer to answer a claim petition shall not serve as an admission or otherwise bind the [UEGF] under section 416" of the Act. Section 1604(a) of the Act, added by section 7 of the Act of November 9, 2006, P.L. 1362, *as amended*, 77 P.S. §2704.

Here, although Chopstix did not file an answer to the claim petition, whether Chopstix was Claimant's employer is a question of law and not a question of fact that could be admitted by Chopstix's failure to file an answer. *See American Road Lines*, 39 A.3d at 610; *Bensing*, 830 A.2d at 1077-78. An uninsured employer's failure to answer a claim petition does not serve as an admission or bind the UEGF. *See* Section 1604 of the Act, 77 P.S. §2704. Therefore, the WCJ was not precluded from deciding this question of law.

We next address whether the WCJ erred in determining that Claimant was not employed by Chopstix. Claimant argues that based on the testimony of Mr. Zheng, which was credited by the WCJ, there was substantial evidence in the record to establish that Claimant was employed by Chopstix. Specifically, Claimant contends that Mr. Zheng testified Mr. Wei was the owner of Chopstix restaurant, located on Buffalo Road in Erie, and Claimant was injured while working at the restaurant. Claimant maintains that Mr. Zheng testified that the owner of Chopstix told Claimant where he needed to report and work, provided housing for Claimant, and contacted

11

Claimant to ask him to work on the Erie job. Based on these facts of record, Claimant argues there is sufficient evidence that Chopstix exercised significant control over the means by which Claimant accomplished the work, such that Claimant was rendered an employee of Chopstix.

We note that "it is a fundamental tenet of workers' compensation law that the WCJ, as fact-finder, has complete authority over questions of witness credibility and evidentiary weight." *Verizon Pennsylvania Inc. v. Workers' Compensation Appeal Board (Mills)*, 116 A.3d 1157, 1162 (Pa. Cmwlth. 2015). "For purposes of appellate review, it is irrelevant whether there is evidence to support contrary findings; if substantial evidence supports the WCJ's necessary findings, those findings will not be disturbed on appeal." *Id.*[6] Therefore, "[a]s the ultimate fact-finder, the WCJ has exclusive province over questions of credibility and evidentiary weight, and is free to accept or reject the testimony of any witness, including a medical witness, in whole or in part." *Id.* A court is only permitted to overturn a credibility determination "if it is arbitrary and capricious or so fundamentally dependent on a misapprehension of facts, or so otherwise flawed, as to render it irrational." *Id.*

Although Claimant testified that Mr. Zheng was his employer, the WCJ did not credit this testimony, but instead, credited Mr. Zheng's testimony that he did not hire or employ Claimant and that they were co-workers. (F.F. No. 10.) The WCJ also concluded that Claimant was not employed by Chopstix. However, Claimant argues that Mr. Zheng's credited testimony establishes that Claimant was employed by Chopstix. We observe that although the WCJ concluded Chopstix was not Claimant's

---

[6] "Substantial evidence is such relevant evidence a reasonable person might find sufficient to support the WCJ's findings." *Verizon Pennsylvania, Inc.*, 116 A.3d at 1162 n.4. To determine if a "finding of fact is supported by substantial evidence, this Court must consider the evidence as a whole, view the evidence in a light most favorable to the party who prevailed before the WCJ, and draw all reasonable inferences which are deducible from the evidence in favor of the prevailing party." *Id*

employer, whether an employer/employee relationship exists is a question of law that is fully reviewable by this Court. *See American Road Lines*, 39 A.3d at 610.

Regarding the relationship between Claimant and Chopstix, Mr. Zheng testified that Mr. Wei was the restaurant owner and that Mr. Wei hired two or three individuals, including Claimant. (N.T., 6/30/16, at 9-10.) When asked the name of Mr. Wei's restaurant, Mr. Zheng said it was called "Something like Quiet, Quiet something, means like Chopsticks something." (N.T., 6/30/16, at 18.) Mr. Zheng could not remember the address of the restaurant, but recalled that it was located on Buffalo Road in Erie. *Id.* Mr. Zheng also testified that Mr. Wei paid and provided housing for him and Claimant. (N.T., 6/30/16, at 18-20.) Additionally, Mr. Zheng stated that Mr. Wei instructed them what work needed to be done and where to paint. (F.F. No. 4(h); N.T., 6/30/16, at 19.) When asked the name of the restaurant a second time on cross-examination, Mr. Zheng again replied, "Chopsticks something." (N.T., 6/30/16, at 26.)

In determining whether a particular relationship is that of employer/employee or owner/independent contractor, courts consider a number of factors, including,

> (1) control of [the] manner [in which] the work is done; (2) responsibility for result only; (3) terms of agreement between the parties; (4) nature of the work/occupation; (5) skill required for performance; (6) whether one is engaged in a distinct occupation or business; (7) which party supplies the tools/equipment; (8) whether payment is by time or by the job; (9) whether work is part of the regular business of employer; and, (10) the right to terminate employment.

*American Road Lines*, 39 A.3d at 611 (citing *Hammermill Paper Co. v. Rust Engineering Co.*, 243 A.2d 389, 392 (Pa. 1968)). Although no one factor is dispositive, "[t]he key factor is whether the alleged employer had the right to control the work to be done and the manner in which the work is performed." *American Road Lines*, 39

13

A.3d at 611. Control exists "where the alleged employer: possesses the right to select the employee; the right and power to discharge the employee; the power to direct the manner of performance; and, the power to control the employee." *Id.*

Based on the credited testimony, there is insufficient evidence to establish an employer/employee relationship between Chopstix and Claimant. The only testimony regarding Chopstix was that Mr. Wei owned the Erie restaurant where Claimant and Mr. Zheng worked, that the restaurant was named "Chopsticks something," and that it was located on Buffalo Road in Erie. This does not demonstrate that Chopstix, as an entity, controlled Claimant or directed the manner in which Claimant performed the Erie job.

Although Claimant attempts to argue that Chopstix and Mr. Wei, who was never individually named as an employer, are one and the same, based on the claim petition filing Chopstix is a separate and distinct corporate entity. It is a well-settled rule, however, that courts will not disregard a corporate entity, *i.e.*, pierce the corporate veil, "absent a showing that the entity was used for the perpetration of fraud, or as a means to justify a wrong, or that the corporate assets were illegally used for the benefit of a controlling party." *Harry Zeruld Co. v. Workmen's Compensation Appeal Board*, 410 A.2d 954, 956 (Pa. Cmwlth. 1980). Therefore, "absent a showing of fraud or improper corporate manipulations designed to circumvent the [Act], courts will not sanction a disregard of the corporate entity. There must be present some item of unfairness, injustice[,] or some compelling public policy favoring such disregard." *Id.* (internal quotation marks omitted). Claimant has not presented any evidence that would justify disregarding Chopstix as a corporate entity and treating Mr. Wei as the employer. In fact, Claimant has not presented any evidence regarding Chopstix, as a corporate entity, such as its certificate of organization or wage records.

Even if we were to disregard Chopstix as a corporate entity and impute Mr. Wei's actions to Chopstix, the testimony regarding Mr. Wei would not establish

14

an employer/employee relationship. Mr. Zheng testified that Mr. Wei hired Claimant and paid and provided him housing. Mr. Zheng also testified that Mr. Wei told him and Claimant what work needed to be done and where to paint; however, he did not testify to the overall level of control that Mr. Wei exercised over Claimant. In particular, there was no testimony on whether Mr. Wei had the power to direct the *manner* of Claimant's performance and the power to control the work to be completed by Claimant. Further, there was no evidence relating to whether Mr. Wei controlled the manner in which the work was done, *rather than just the result*, the terms of the agreement between Mr. Wei and Claimant, and who supplied the tools/equipment necessary for the job. *See American Road Lines*, 39 A.3d at 611. Thus, even if we were to disregard Chopstix as a separate corporate entity and ascribe the actions of Mr. Wei—who was not named as an individual employer and did not testify—to Chopstix, the credited testimony is insufficient to establish an employer/employee relationship.

We next address whether Claimant is entitled to benefits pursuant to the CWMA. Claimant attempts to distinguish this case from *Department of Labor and Industry v. Workers' Compensation Appeal Board (Lin and Eastern Taste)*, 187 A.3d 914 (Pa. 2018), in which the Pennsylvania Supreme Court held that the CWMA is inapplicable to a restaurant when that restaurant is not in the construction industry. Claimant contends that the instant case is different because Chopstix's relationship vis-à-vis Claimant went beyond that of a property owner/independent contractor relationship. Specifically, Claimant notes that Chopstix provided housing for construction workers, imposed reporting requirements, arranged transportation to the worksite, and assigned specific jobs to workers, which exceeded an independent contractor relationship and demonstrates that Chopstix was engaged in the construction industry. Claimant also alleges that the purpose of the CWMA is to prohibit the improper classification of employees as independent contractors in order to avoid

15

liability for WC benefits and that the WCJ's and Board's determination that Chopstix was not in the construction industry goes against the purpose of the CWMA.

Section 3 of the CWMA provides as follows:

**(a) General rule.**—For purposes of workers' compensation, unemployment compensation and improper classification of employees provided herein, an individual who performs services *in the construction industry* for remuneration is an independent contractor only if:

(1) The individual has a written contract to perform such services.

(2) The individual is free from control or direction over performance of such services both under the contract of service and in fact.

(3) As to such services, the individual is customarily engaged in an independently established trade, occupation, profession or business.

43 P.S. §933.3 (emphasis added).

In *Eastern Taste*, our Supreme Court analyzed section 3 of the CWMA. There, the claimant was hired to perform remodeling work on a restaurant that had not yet opened. *Eastern Taste*, 187 A.3d at 916. The claimant did not sign a written contract and was paid on a *per diem* basis. *Id.* Although the restaurant owner's husband oversaw the project and instructed claimant what sort of work needed to be done, he did not direct the claimant's specific activities. *Id.* The owner's husband supplied the necessary materials for the project, but the claimant brought and used his own tools. *Id.* The WCJ denied benefits, concluding the claimant did not prove he was an employee of the restaurant and that the CWMA did not apply because Eastern Taste was a restaurant, not a construction business. *Id.*

16

On appeal to the Supreme Court, the claimant argued that the CWMA was applicable. Our Supreme Court observed that the dispositive interpretive question regarding the CWMA was whether "'an individual who works for a construction business in the construction industry for remuneration' . . . refers to an individual who works for a construction business, or to an individual whose job duties merely involve construction activities." *Id.* at 923 (quoting section 3 of the CWMA, 43 P.S. §933.3). The Court also noted that the CWMA did not provide a definition for the term "industry" or "construction industry." *Eastern Taste*, 187 A.3d at 923.

Ultimately, the Court concluded that in enacting the CWMA, the General Assembly did not intend for the CWMA to apply to all contractual arrangements involving any type of construction activity. *Id.* at 925-26. Consequently, "when determining whether the CWMA is applicable to the situation at hand, the construction activity must be analyzed and considered in the context of the putative employer's industry or business." *Id.* at 926. The Court held that "in confining its applicability to individuals who perform services 'in the construction industry' . . . the CWMA refers only to those individuals who work for a *business that performs construction services*, namely '[e]rection, reconstruction, demolition, alteration, modification, custom fabrication, building, assembling, site preparation and repair work.'" *Id.* (emphasis added) (quoting sections 2 and 3 of the CWMA, 43 P.S. §§933.2-933.3). Thus, "the CWMA is inapplicable where the putative employer is *not in the business of construction*." *Eastern Taste*, 187 A.3d at 926 (emphasis added). Because Eastern Taste was a restaurant and not in the construction business, the Court held that the CWMA did not preclude the claimant's classification as an independent contractor. *Id.*

Like *Eastern Taste*, the CWMA does not apply to the instant case. All of the evidence that was presented demonstrates that Chopstix was a restaurant and not in the construction business. In particular, Mr. Zheng testified that the Erie job involved remodeling and reconstructing a restaurant in Erie named "Chopsticks something,"

17

(N.T., 6/30/16, at 9, 18), and Claimant testified that the Erie job involved rehabbing and rebuilding a restaurant. (N.T, 3/29/16, at 8-10.) There was simply no evidence presented that Chopstix was anything but a restaurant. Accordingly, pursuant to *Eastern Taste* and section 3 of the CWMA, because Chopstix was a restaurant and not operating a business in the construction industry, the CWMA does not apply to Claimant's claims.

## Conclusion

Because Claimant failed to meet his burden of establishing an employer/employee relationship and, therefore, was not entitled to WC benefits, we affirm the order of the Board.[7]

_____
PATRICIA A. McCULLOUGH, Judge

---

[7] Because we conclude that Claimant did not prove the existence of an employer/employee relationship and, consequently, was not entitled to WC benefits, we do not address the question of whether the WCJ erred in determining that Claimant was an undocumented worker and whether Claimant's alleged status as an undocumented worker made him ineligible to receive WC benefits.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Qian Hu Zhang,                                 :
                    Petitioner               :
                                               :   No.  1674 C.D. 2018
             v.                                :
                                               :
Workers' Compensation Appeal                   :
Board (Chopstix 4041, LLC and                  :
Uninsured Employer Guaranty Fund),             :
                    Respondents               :

## *ORDER*

AND NOW, this 2nd day of August, 2019, the November 30, 2018 order of the Workers' Compensation Appeal Board is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge